**STATE of Tennessee, ex rel. Robert CONGER et al.**

v.

**MADISON COUNTY et al.**

Supreme Court of Tennessee.

March 26, 1979.

Rehearing Denied May 29, 1979.

Russell Rice, Rice & Rice, Sidney W. Spragins, Jackson, for petitioners.

Hewitt P. Tomlin, Jr., George R. Fusner, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, for respondent Madison County.

Jack Manhein, Jackson, for respondent Transamerica Ins. Co.

Thomas E. Fox, Franklin, for Williamson County, amicus curiae.

Edward G. Kelly, Jr., Cobb, Edwards, Hamlet, Nichol & Woodall, Memphis, for Bd. of Ed., Memphis City Schools, amicus curiae.

Charles E. Griffith, Robert C. Evans, Griffith & Stokes, Nashville, for Tennessee Municipal League, et al., amicus curiae.

Charles A. Maner, Jr., Dale C. Workman, Knoxville, for Knox County and Judge C. Howard Bozeman, amicus curiae.

## OPINION

HENRY, Chief Justice.

The principal issue before the Court is whether Federal Revenue Sharing Funds allocated to a county and, by its Quarterly Court, transferred to the County School Fund, must be apportioned with a special school district within the county under § 49–605, T.C.A.[1] The Trial Judge responded in the affirmative; the Court of Appeals in the negative; we agree with the Court of Appeals.

A preliminary issue, but one of pivotal importance, is whether such funds may be used by a county for school purposes.

We hold that they may.

## I.

### History of the Lawsuit

This action was instituted on August 24, 1977 in the Circuit Court at Jackson by the three Commissioners of the City of Jackson, who, by virtue of their office constitute the School Board of the City of Jackson, which maintains its own school system, operating wholly within the city.

Named as parties defendant were Madison County, the County Judge,[2] the County Trustee, and the surety on the Trustee's official bond.

The complaint alleges, and the trial judge found, that during the early part of 1977 the Quarterly Court of Madison County appropriated to the Madison County General Purpose School Fund, for maintenance and operating purposes, the sum of $201,476.00 from Federal Revenue Sharing Funds, and that this sum was not apportioned with the City of Jackson.

It is further averred and established by the proof that the Quarterly Court, in its budget for the fiscal year ending in 1978, appropriated from Federal Revenue Sharing Funds to the Madison County School System the sum of $565,822.51, accompanied by a stated intention that those funds would not be apportioned in accordance with the City's view of the mandate of § 49–605, T.C.A. These funds also were appropriated for maintenance and operation.

The trial court held that apportionment was required under § 49–605, T.C.A., and should have been accomplished by using the average daily attendance (ADA) computations. The ADA ratio between the two systems indicated that the City of Jackson's share was 48.561537% and that of Madison County, 51.438427%.

From these figures, the Trial Judge found that it would have required a total

---

1. The apportionment provision is now codified in § 49–614, T.C.A., which contains new acronyms, e. g., WFTEADA (weighted full-time equivalent average daily attendance), in place of ADA. Section 49–602, et seq. contains the statutory provisions relating to the State Foundation Program, and was derived from Chapter 289, Acts of 1977. References in this opinion are to § 49–605, T.C.A., as it appears in main Volume 9, T.C.A.

2. This action was instituted and all pertinent events occurred prior to the 1978 amendment to Article VII, Sec. 1 of the Constitution of Tennessee, which, inter alia, created the office of County Executive. This amendment was adopted in convention on December 6, 1977, approved by the people on March 7, 1978, and proclaimed by the Governor on March 31, 1978.

appropriation of $391,683.82 to validate the appropriation to the Madison County System. This would have resulted in an apportionment of $190,207.82 to the City of Jackson. Therefore, he awarded judgment against Madison County in this amount.

He further found that the County Trustee had knowingly failed to apportion the $565,822.51 appropriated for fiscal year 1978 and that the "Defendants in this case openly state that they do not intend to make such apportionment as required by [section 49–605] . . . ." In this connection he held that "the determination not to apportion in both instances was made by the Madison County Quarterly Court and such decision was communicated by the County Judge to the County Trustee."

Responding to the prayer for a declaratory judgment, the Trial Judge held:

> that all funds, including funds derived from Federal Revenue Sharing Grants, lawfully appropriated by the Madison County Quarterly Court for the current operation and maintenance of county schools must be placed in one separate school fund and apportioned between [the two systems] in accordance with the provisions of Section 49–605 Tennessee Code Annotated.

He "strictly and permanently enjoined" the Madison County Quarterly Court, the County Judge and the County Trustee to make such apportionments "now and hereafter."

To insure the collection of the judgment against Madison County, he ordered the county to levy a tax on all real estate in the county or to provide for payment by 31 December 1978.

The Surety on the Trustee's official bond was dismissed.

To enforce his decree writs of mandamus, injunction, and execution were awarded.

To summarize, the Trial Judge held that § 49–605, T.C.A. required that Federal Revenue Sharing Funds appropriated for current operation and maintenance of county schools must be apportioned, and ordered the Quarterly County Court, the County Judge, and the County Trustee to make the apportionment now and hereafter. He gave judgment against the county and awarded appropriate extraordinary process.

The record fully supports all factual findings and we concur in them.

The Court of Appeals, in a brief opinion, held that § 49–605, T.C.A. "has no application to funds received by Madison County under the State and Local Fiscal Assistance Act of 1972, as amended."

We examine these divergent legal conclusions.

## II.

### *Federal Revenue Sharing Act*[3]

We think an orderly consideration of this action must start with the Federal Revenue Sharing Act.

This act was designed to return to state and local communities revenue collected by the federal government for use "according to their own perceived demands and objectives and not those of the federal government." *Carolina Action v. Simon*, 389 F.Supp. 1244, 1248 (M.D.N.C.1975).

It should be noted at the outset that, in its original form, the act restricted the use of these federal funds to "priority expenditures." Education was not an enumerated permitted use. *See* 31 U.S.C. § 1222. This section was repealed by Pub.L. 94–488, § 3(a), 90 Stat. 2341, October 3, 1976.

The statutory scheme of distribution is somewhat cumbersome and tends to be confusing. It is not required that we deal with it in detail. The allocation among states is determined by 31 U.S.C. § 1225.

---

**3.** The correct title of this law is the "State and Local Fiscal Assistance Act of 1972." We elect to use the popular name.

The amount allocated to each state is divided one-third to the state government and two-thirds to local governments, 31 U.S.C. § 1226, on the basis of a formula derived from the Act. The two-thirds allocated to local governments is distributed on the basis of a formula reflected in 31 U.S.C. § 1227. Generally speaking, the local government share is allocated to county areas on the basis of the ratio that the population of the county, multiplied by the general tax effort factor of that county area, multiplied by the relative income factor, bears to the sum of that figure for all county areas in the state. 31 U.S.C. § 1227(a).

The county area share is divided between the county and all municipalities of the county. The allocation to a county government is on the basis of the ratio the adjusted taxes of the county government bears to the adjusted taxes of the county government and all other units of local government located in the county area. 31 U.S.C. § 1227(b)(1).

The remaining funds are then allocated among the municipalities (in Tennessee) located in the county area. 31 U.S.C. § 1227(b)(2). As a result, the municipalities within a county area *collectively* receive their allocations in the same manner as do counties. The allocation *among* the municipalities is based upon a formula taking into consideration population, general tax effort, and relative income. 31 U.S.C. § 1227(b)(2).

Attached hereto as an Appendix is a flow chart designed to show generally the distribution of these funds. It is included solely to clarify this opinion, and should only be used for that purpose. The details of the various formulae and other factors not shown in this appendix are set forth in Chapter 24, Title 31, U.S.C.

As will be seen by this narration and by reference to the appendix, the City of Jackson has already received an allocation of Federal Sharing Funds, wholly separate and apart from those received by Madison County. The entitlement of all governmental units is determined by computer and the distributions are made directly to the local governments from the Federal Sharing Office in Washington, D. C. May the City of Jackson receive a portion of the funds allocated to the county?

Federal statutes alone do not provide the answer. In order to qualify for the federal funds, a county or municipality

. . . must establish . . . to the satisfaction of the Secretary that—

\*        \*        \*        \*        \*        \*

(4) it will provide for the expenditure of amounts received under subchapter I of this chapter only in accordance with the laws and procedures applicable to the expenditure of its own revenues. 31 U.S.C. § 1243(a)(4)

Thus, the answer to the question presented in this action lies in the statutes of the State of Tennessee.

### III.

*Source, Use, and Nature of County Funds*

■ Federal Revenue Sharing Funds are not earmarked for any specific purpose. Upon their receipt by a county, they become subject to appropriation and use by the Quarterly Court.

In attempting to clarify the nature and permissible use of these funds, our statutory law is not particularly helpful. For instance, § 5–801, T.C.A., undertakes to inventory all sources of county revenue. It reads:

County revenue is derived from taxes on polls, property, privileges, litigation, merchants, peddlers; from strays, fines and forfeitures, as below [See Section 5–802 through 5–805], and from money remaining unclaimed more than two (2) years in clerks' offices.

It is obvious that this statute is hopelessly out of date and that Federal Revenue Sharing Funds, now a major source of county revenue, do not fit into any of the listed classifications.

There is, however, another statute, not cited by the principal parties, but relied upon by the Surety on the Trustee's bond, which we consider to be highly significant. Section 5–924, T.C.A. reads as follows:

All funds from whatever source derived, including but not limited to taxes, county aid funds, *federal funds,* and fines, which are to be used in the operation and respective programs of the various departments, commissions, institutions, boards, offices, and agencies of county governments shall be appropriated to such use by the county legislative bodies. (Emphasis supplied)

It should be noted that this statute, as originally enacted in 1959 did not include federal funds. By Chapter 615 of the Public Acts of 1976 the original language was changed by adding the words "federal funds." No other change was made. Section 49–605, however, was not amended.

It would seem clear that the Quarterly Court of Madison County had the authority, under this statute, to appropriate Federal Revenue Sharing Funds to use in the operation and maintenance of the school system. Indeed, independent of this statutory authorization, it would seem that the Quarterly Court had the authority to place these revenues in any of the County's funds, including the school fund.

There is, however, a line of cases that at least superficially tends to indicate a contrary result.

In *State ex rel. Davidson County Board of Education v. Pollard,* 124 Tenn. 127, 136 S.W. 427 (1910), the question presented to the Court was whether a county court had the authority to make an appropriation out of the general fund of a county for school

purposes. Responding in the negative, the Court held that

county purposes are of two-kinds, general county purposes and special county purposes, and that moneys raised by taxation for special county purposes cannot be used for a general county purpose, and that money raised for general county purposes cannot be used for a special county purpose. 124 Tenn. at 130–31, 136 S.W. at 428.

The Court quoted with approval the following language from *Kennedy v. Montgomery County,* 98 Tenn. 165, 179, 38 S.W. 1075, 1079 (1897):

The taxpayers of every county have a right to know for what purpose they are being taxed, and also to know that taxes collected from them for any special purpose are applied to such purpose, and not to some other, at the discretion of county officials, and according to their ideas of public policy or expediency. *The law does not provide for the mixing of special and ordinary funds, nor the supplementing of one by the other by county officials.* (Emphasis in original) 124 Tenn. at 135, 136 S.W. at 429

The *Pollard-Kennedy* rationale was followed in *Board of Commissioners of Union City v. Obion County,* 188 Tenn. 666, 222 S.W.2d 7 (1949). In that case it appeared that the county had paid a bonus to teachers in the county schools, and had funded it by a transfer from the "General Fund" to the "School Fund." Pointing out that the general fund "had been levied and collected for specific county purposes," the Court held that "[t]he mere fact that . . . the money was passed through the elementary school fund prior to its disbursement . . . did not change the nature of the money or make it legally a part of the elementary school fund." Therefore, the Court held it "remained a part of the County's 'General Fund'" and could not be diverted. 188 Tenn. at 670, 222 S.W.2d at 8.

An equally strong case is *State ex rel. Baird v. Wilson County,* 212 Tenn. 619, 371 S.W.2d 434 (1963). In that case the County Quarterly Court had diverted money from the county general fund for elementary school purposes. Relying upon *Obion County, supra* and *State, ex rel. Cope v. Davidson County,* 198 Tenn. 24, 277 S.W.2d 396 (1955), (fund derived from special tax for teacher transportation was in reality a means for increasing salaries without making a devise with the City of Nashville) the Court said:

> Both the *Obion County* case and the *Davidson County* case clearly state that funds derived from taxes levied for one purpose, when transferred by the Quarterly County Court to the school fund, do not become a part of the funds to which transferred. The unauthorized and *ultra vires* resolution of the County Court diverting funds from the legitimate purpose for which the tax to produce such funds had been levied does not change the nature of the fund or make it legally a part of the fund to which it is thus wrongfully transferred. 212 Tenn. at 626, 371 S.W.2d 438.

If we hold these cases to be applicable, it would logically follow that Federal Revenue Sharing Funds may not be used for the maintenance and operation of public schools in the county, and that such a use would be an unauthorized diversion. Pursuant to such a holding the county would have to transfer the funds to the County General Fund and there could be no apportionment.

Such a holding would frustrate the purpose of the act, which is to permit local governments to "spend these funds according to their own perceived demands and objectives." Further, it would be contrary to § 5–924, T.C.A. which provides, *inter alia,* that "[a]ll . . . federal funds . . which are to be used [for various county purposes] shall be appropriated to such use by the county legislative bodies."

Finally, such a holding would contradict common sense and, in effect, make these funds unusable for any purpose. It must be borne in mind that these are not conventional county revenues raised by conventional tax levies. They are Federal Sharing Funds, and their use must lie in the sound judgment and discretion of the county government.

The cases noted above involve the unauthorized diversion of conventional tax revenues raised for specific and itemized purposes. Therefore our courts consistently and correctly have held that tax revenues raised for stated public purposes may not be diverted. Federal Revenue Sharing Funds, however, are not derived from county tax levies and collected for designated purposes.

We, therefore, hold that Federal Revenue Sharing Funds may be allocated for school purposes.

Nothing in our recent case of *City of Harriman v. Roane County,* 553 S.W.2d 904 (1977) alters this conclusion. In that case we were dealing with conventional county revenues, expenditure of which is governed by state statutory and decisional law. We held that the proceeds of the wholesale beer tax could not lawfully be appropriated to school purposes "without specific statutory authorization," 553 S.W.2d at 907, and that although the second half of the retail sales tax proceeds could be so used, they must be apportioned in accordance with § 49–605, T.C.A.

■ Again, in the instant case we do not deal with conventional state or county revenues, but with funds that come to local governments with the restriction that they will be expended "in accordance with the laws and procedures applicable to the expenditure of its own revenues." 31 U.S.C. § 1243(a)(4). There is no Tennessee law that precludes the use of these funds for any legitimate county purpose.

IV.

*Apportionment*

The remaining question is whether these funds must be apportioned with the City of Jackson. We respond in the negative.

Section 49–605, T.C.A. provides, in pertinent part as follows:

> For each school system there shall be levied for current operation and maintenance not more than one school tax for all such grades as may be included in the local school program. Each system shall place in one separate school fund all school revenues for current school operation purposes *received from the state, county, and other political subdivisions, if any.* . . . All school funds for current operation and maintenance purposes collected by any county, [except for transportation tax levy funds] shall be *apportioned* by the county trustee *among the county, city, and special school districts therein* on the basis of the average daily attendance maintained by each, during the current school year. (Emphasis supplied)

■ By its very phraseology, this statute cannot be applicable to Federal Revenue Sharing Funds, the source of which is the Federal Government. Money received from the Federal Government obviously is not received from a state, county, or other political *subdivision.* The political facts of life are that the Federal Government is in no sense a "political subdivision."

The apportionment provision for "[a]ll school funds for current operation and maintenance purposes collected by any county" simply refers to all funds collected or received from the state, county, or other political subdivision. It adds nothing to the scope and extent of the definition of the funds embraced within the statute.

Section 49–605, T.C.A. embraces all funds received from the state, raised by local taxation, or derived from appropriate bond issues. It is inapplicable to Federal Revenue Sharing Funds, which may or may not be used for school purposes.

■ We, therefore, hold that a county's share of Federal Revenue Sharing Funds, allocated to the County School Fund, is not subject to the provisions of § 49–605, T.C.A. and, therefore need not be apportioned among the special school districts of a county.

This result not only is dictated by the language of the statute, but is commanded by considerations of equity and fundamental fairness. Under the formula heretofore discussed, the City of Jackson has already received its fair share of Federal Revenue Sharing Funds. This suit represents an effort to encroach upon the County's share. If we were to hold in the City's favor, the County would have to pay the City the sum of $190,207.82 as a result of having appropriated $201,476.00 to the School Fund, leaving a net gain of $11,268.18. This would be unconscionable.

There appears in this record a chart which we think validates the equitable conclusions we reach. This chart is based upon the ninth entitlement period covering the period from 1 October 1977 through 30 September 1978. It shows the result of the application of the various pertinent formulae.

[See following illustration.]

```
Allocation to State &
Local Governments
$6,850,000,000

Tennessee State &
Local Governments
$122,675,190

⅓ to State                    ⅔ to County Areas
$40,891,731                   in Tennessee
                              $81,783,459

            Madison County Area
            (Counties & Cities)
            $1,523,657

Madison County                Cities of Madison County
$545,592                      $978,065

            Jackson                        Medon City
            $977,462                       $603
```

---

The pie has already been sliced; we are not willing to slice it again.

Section 49–605, T.C.A. came into existence long before Revenue Sharing came upon the scene. If the conclusions we reach are not in the public interest, the General Assembly should be requested to scrutinize § 49–605, T.C.A. in the light of the distribution of federal funds to the local governments of Tennessee.

Affirmed.

FONES, J., concurs with opinion.

COOPER and HARBISON, JJ., concur.

BROCK, J., dissents with opinion.

## APPENDIX

## DISTRIBUTION OF FUNDS

### Notes on Distribution to Local Governments

1.  *First* allocation is to county areas on basis of population multiplied by general tax effort multiplied by relative per capita income.  This fixes the ratio each of the 95 county areas bears to all 95 such areas.

2.  *Second* allocation is to county government and all municipalities in the county on the basis of adjusted taxes.

3.  *Third* allocation is among the various municipalities on the basis of population x tax effort x relative per capita income.

FONES, Justice, concurring in result.

The Chief Justice has written an excellent opinion, exploring every avenue that might lead the Court to the correct judicial resolution of this dispute between the City of Jackson and the County of Madison. But the intractable problem presented must, in the final analysis, be answered by an interpretation of T.C.A. § 49–605. The difficulty in finding the correct judicial solution of the problem in that section lies in the fact that there is no express language in the statute that dictates either result, and an attempt to ascertain legislative intent is, in my opinion, inappropriate because the section was enacted prior to the existence of federal revenue sharing.

My brother Brock has written an excellent, well reasoned opinion, but I do not share his conviction that *City of Harriman v. Roane Co., supra,* and *Board of Education v. Shelby Co., infra,* control the disposition of this case. Like the dissent, I do not concur in predicating the decision, in whole or in part, on equitable considerations. This record is inadequate to enable me to pass judgment on the equities. In my opinion, the equities of slicing the federal revenue sharing pie are appropriate for the legislative halls only.

I concur in the result reached by the majority only because T.C.A. § 49–605 can be read to say that the expression "all school funds" is modified by the phrase "received from the state, county and other political subdivisions", and therefore carries no mandate that federal revenue sharing funds be apportioned.

COOPER, J., concurs.

BROCK, Justice, dissenting.

I respectfully dissent. In my view, the majority has given an erroneous construction to T.C.A., § 49–605, subsection A, which provides:

"All school funds for current operation and maintenance purposes collected by any county, except the funds raised by any local special pupil transportation tax

levy as authorized in this subsection, shall be apportioned by the county trustee among the county, city, and special school districts therein on the basis of the average daily attendance maintained by each, during the current school year." [1]

The language employed by the Legislature is all inclusive. It purports to control "[a]ll school funds for current operation and maintenance purposes" and requires that they be apportioned by the trustee of the county among all school systems in the county whether operated by the county, city or other special school district. The only exception authorized is such funds as result from a local special pupil transportation levy. It is clear to me that the Legislative intent is evident and that the quoted provision requires apportionment of county school funds which are appropriated for current operation and maintenance purposes, regardless of the source of such funds; so that, Federal revenue sharing funds which are allocated for such school purposes must be apportioned under this provision.

Our recent decision in *City of Harriman v. Roane County,* Tenn., 553 S.W.2d 904 (1977) supports this view. Speaking for a unanimous Court, Mr. Justice Harbison, after noting that funds raised by a county from a special tax levy for the purpose of "the building, repair and equipment of county schools" were not required by the above quoted statute to be apportioned with other school systems in the county, further stated:

"Where, however, the county does not make such a special purpose levy, but lawfully appropriates funds to current school operations, as has been done here with the portion of sales tax at issue, then those funds become subject to the apportionment provisions of the general school statutes." 553 S.W.2d at 909.

In the course of that opinion, we also quoted with approval from *Board of Education of the Memphis City Schools v. Shelby County,* 207 Tenn. 330, 339 S.W.2d 569 (1960) as follows:

1. This mandate is re-stated in paragraph "5" of subsection A.

"In that case a private act purporting to authorize a different distribution of funds between the city and county school systems from that provided in what is now T.C.A. § 49–605 was held unconstitutional and potentially disruptive of the uniform system contemplated by the general statutes.

"In that case, the Court said:

'The general purpose and plan of the Education Acts passed by the Legislature of Tennessee, beginning with the Act of 1925, referred to hereinabove, was to establish and maintain a *uniform system* of public education in this State, public education being primarily a State function. The philosophy permeating such general uniform plan, as set out in said General Education Acts, in so far as pertinent to the issues in these causes, provides for a division of all county school funds, with the exception of funds for the transportation of pupils attending the public schools, between the County School System and the School systems operated by municipalities or special school districts, such as the City of Memphis and its Board of Education, within the county, on a proportional basis of the average daily attendance of pupils attending the various schools in a county.' 207 Tenn. at 345, 339 S.W.2d at 576.

"Further, the Court said:

'Education of the youth of each county is the primary purpose of our State Educational System as reflected throughout all of its General Education Acts, and the apportionment of local school funds under the general law on the basis of average daily attendance of pupils in the various schools gives to every school system its proportional and fair share of said funds, so, in a sense, each pupil may be afforded the same *opportunity to obtain an educa*tion, regardless of place of residence.' 207 Tenn. at 351, 339 S.W.2d at 578." 553 S.W.2d at 908.

This Court stated further in the *City of Harriman* case:

"The provisions of T.C.A. § 49–605 are mandatory. They require that all school funds for current operations and maintenance purposes collected by a county, except those used for pupil transportation, 'shall be apportioned by the county trustee, among the county, city, and special school districts therein on the basis of average daily attendance maintained by each, during the current school year.' " 553 S.W.2d at 908.

It appears clear to me that the majority in the case at bar have departed from the liberal and very sound construction of T.C.A., § 49–605, laid down 19 years ago in *Board of Education of the Memphis City Schools v. Shelby County, supra,* and again only 18 months ago in *City of Harriman v. Roane County, supra.* In holding that the apportionment mandate of T.C.A., § 49–605, does not apply to "Federal revenue sharing funds" although those funds are appropriated by the county for current operation and maintenance school purposes, the majority has engrafted into the statute an additional exception which should read as follows:

". . . and except for such funds as a county may receive from the Federal government as revenue sharing funds."

Certainly the language of the statute does not require such an exception. Moreover, I think it clear that the judicially added exception of Federal revenue sharing funds is contrary to the manifest legislative intent, i. e., that the education of every school child in a given county of this state shall be supported by an equal number of dollars without regard to whether the child is a student of the county school system, the city school system or the system of some other special school district within the county and also without regard to the source of such school funds. The majority permits Madison County to appropriate huge sums of money for the education of children of the Madison County school system without apportioning those funds with the City of Jackson school system, merely because the source of those funds was a Federal "revenue sharing" grant.

The result thus reached by the majority is not required by the applicable Federal law, for, as pointed out in the majority opinion, the Federal act merely provides that Federal revenue sharing funds shall be expended ". . . in accordance with the laws and procedures applicable to the expenditure of its (county's) own revenues." 31 U.S.C., § 1243(a)(4). "Its (Madison County's) own revenues," once appropriated for current operation and maintenance purposes, as was done by the Madison County court in this case, are required by T.C.A., § 49–605, to be apportioned on the basis of average daily attendance with the City of Jackson school system. As we held in *City of Harriman, supra,* once the county ". . . lawfully appropriates funds to current school operations, . . . then those funds become subject to the apportionment provisions of the general school statute." 553 S.W.2d at 909.

The majority notes that to hold that T.C.A., § 49–605, requires the apportionment of Federal revenue sharing funds with other school districts within a county does not comport with its notions of "considerations of equity and fundamental fairness." Referring to the fact that the city also receives Federal revenue sharing funds from the Federal government, the majority notes that "[t]he pie has already been sliced; we are not willing to slice it again." However, it should be noted that the "pie" was not doled out by the Federal government to the school system of Madison County or the school system of the City of Jackson; it was doled out to the county of Madison and the City of Jackson each of which was free to expend funds for purposes other than the current operation and maintenance of its school system. Once the county appropriated those funds for the current operation and maintenance of its county school system, however, they became subject to the apportionment required by T.C.A., § 49–605.

I would reverse the judgment of the Court of Appeals and affirm that of the trial court.

## OPINION ON PETITION TO REHEAR

HENRY, Chief Judge.

The petition to rehear is respectfully denied.

Much of the petition takes two members of the Court to task for allegedly applying a "balancing of the equities" test. The opinion shows facially that equitable considerations formed no part of the Court's construction of the statute. After construing Section 49–605, T.C.A., and holding that it was inapplicable to Federal Revenue Sharing Funds, we said:

> This result not only is dictated by the language of the statute, but is commanded by considerations of equity and fundamental fairness.

Thus, it is evident that the matter of "balancing equities" formed no part of the statutory construction consideration. Moreover, three members of this Court expressly disapproved these considerations, thus rendering this portion of the opinion dicta and ineffective.

This Court is acutely aware of the financial considerations involved and is not unsympathetic to the problems of the City of Jackson. The City's prayer for relief must be addressed to the General Assembly. We have construed the appropriate statutes and are satisfied with the conclusions we have reached.

All members of the Court continue to adhere to their previously expressed views.

FONES, COOPER, BROCK and HARBISON, JJ., concur.