**OAK RIDGE CITY SCHOOLS,**
**Plaintiff-Appellant,**

v.

**ANDERSON COUNTY, Tennessee,**
**Defendant-Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

April 27, 1984.

Permission to Appeal Denied by
Supreme Court June 25, 1984.

James M. Webster, Buxton, Layton, Webster & Wilkinson, Oak Ridge, for plaintiff-appellant.

David A. Stuart, Clinton, for defendant-appellee.

OPINION

SANDERS, Judge.

The threshold question on this appeal is whether or not a county is required under T.C.A. § 49-3-315 to apportion to a city school system located within its boundaries funds in its school budget received from the Tennessee Valley Authority in lieu of taxes.

Plaintiff-Appellant, Oak Ridge City Schools, filed suit in the circuit court against the Defendant-Appellee, Anderson County. The complaint alleged the Plaintiff is a school system located in the Defendant County. For a number of years the Defendant has allocated to its general school fund budget funds received by it from the Tennessee Valley Authority in lieu of taxes. It alleged the Defendant has failed to distribute the funds pursuant to T.C.A. § 49–3–315 and Plaintiff has failed to receive its share of the funds from the Defendant. It asked the court to declare that the Defendant owed to the Plaintiff its pro rata portion of the funds.

The Defendant, for answer, admitted the Plaintiff is a school system located within its boundaries. It admitted it has allocated funds received from TVA in lieu of taxes to its general school fund, but it denied the Plaintiff is entitled to share in those funds because such funds were not "received from the state, county (or) political subdivision," as provided for in T.C.A. § 49–3–315.

The parties entered into a stipulation of facts and the case was submitted to the court for determination. As pertinent here, the stipulation is as follows:

"That the stipulated and agreed facts are as follows:

"That Anderson County is a political subdivision of the State of Tennessee.

"That the City of Oak Ridge is an incorporated municipality located within the confines of the County of Anderson and that the City of Oak Ridge operates a school system known as the Oak Ridge Schools.
. . . .

"That Oak Ridge Schools is a special school district as defined by state law.

"Pursuant to the provisions of 16 U.S.C. § 831*l* and the provisions of TCA Sec. 67–24–101 et seq., Anderson County receives in lieu of tax payments from the Tennessee Valley Authority as allocated and determined by the Code sections referred to above.

"That the City of Oak Ridge also receives in lieu of tax payments from the Tennessee Valley Authority.

"Anderson County has allocated in lieu of tax money to the general school fund of Anderson County, Tennessee. Anderson County has failed to apportion to the City of Oak Ridge those funds placed in the general school budget representing in lieu of tax payments from the Tennessee Valley Authority."

The court found the issues in favor of the Defendant and dismissed the complaint. In his determination of the case the court said:

"The ultimate issue is whether the T.V.A. in-lieu-of-tax payment is received from a State, County, or other political subdivision.

"In the Court's opinion the T.V.A. in-lieu-of-tax payment comes from a Federal entity which is an arm of the Federal Government, but is not the Federal Government. However, by a Federal creation it assumes the characteristics which separate the 'authority' from a 'political subdivision', as defined in T.C.A. 49–614." (Now 49–3–315)

"Even though it is the intent of Congress in the legislation creating the in-lieu-of-tax payments by T.V.A., to render financial assistance to local governments in-lieu-of-taxation, the payments made to the State of Tennessee and distributed in accordance with T.C.A. 67–24–101 are not the same as those generated by our local taxing authorities."

\* \* \*

"The Court is guided by the language of *Conger v. Madison County*, 581 S.W.2d 632."

The first issue raised on appeal by Oak Ridge City Schools is whether or not Anderson County acted properly and legally in allocating monies received from the T.V.A. to its general school fund. Since the Appellant, in its brief, admits that Anderson County has acted properly and legally in allocating the funds to its general school fund, we need not discuss this issue further.

The second issue raised by the Appellant is whether or not Anderson County is required, pursuant to T.C.A. § 49–3–315, to

apportion between its schools and the Appellant the T.V.A. in-lieu-of-tax payments.

As pertinent here, T.C.A. § 49–3–315 provides:

"Each LEA [1] shall place in one (1) separate school fund all school revenues for current school operation purposes received from the state, county, and other political subdivisions, if any .... All school funds for current operation and maintenance purposes collected by any county ... shall be apportioned by the county trustee among the LEA's therein on the basis of the WFTEADA [2] maintained by each, during the current school year."

The Appellant asserts that, as an LEA within the language of the statute, it is entitled, on the basis of the WFTEADA maintained by it, to a portion of all of the school revenues placed by the Defendant into its general school budget, including those funds representing the T.V.A. in-lieu-of-tax payments.

The Appellant relies upon *City of Harriman v. Roane County*, 553 S.W.2d 904 (Tenn.1977), to support its claim that it is entitled to a portion of the in-lieu-of-tax payments. In *City of Harriman*, the county was sued, in part, for its failure to divide certain county sales tax receipts with the separate city school system. The governing body of the county, authorized by T.C.A. § 67–6–712(2)(A) to allocate certain of the sales tax receipts "to such fund or funds of the county" as it shall direct, placed the funds in the county's school fund. It then failed to divide these funds with the city school system. Our Supreme Court, in holding that the funds had to be shared with the city schools, stated:

"The provisions of T.C.A. § 49–605 [now, § 49–3–315] are mandatory. They require that all school funds for current operations and maintenance purposes col-

lected by a county, except those used for pupil transportation, 'shall be apportioned by the county trustee among the county, city, and special school districts therein on the basis of the average daily attendance maintained by each, during the school year.' "

The Appellee contends that a critical distinction exists between the facts in *City of Harriman* and those in the present controversy. Focusing on the following specific language from T.C.A. § 49–3–315—"Each LEA shall place in one (1) separate school fund all school revenues *received from the state, county, and other political subdivision, if any*" (Emphasis ours)—the Appellee admits that, under the facts present in the *City of Harriman*, the county was required to split its sales tax receipts with the city schools. In the present case, however, since the funds in question are not "received from the state, county, and other political subdivision," but instead are received from a federal entity (T.V.A.), the Appellee contends that it is not required to divide with the Appellant the in-lieu-of-tax payments. To support its contention that, under T.C.A. § 49–3–315, funds received by a county from a federal source and placed in the county's school budget need not be divided with a separate city school system, the Appellee directs this court's attention to *State ex rel. Conger v. Madison County*, 581 S.W.2d 632 (Tenn.1979).

In *Conger*, after the county had received its share of federal revenue sharing funds and after it had allocated the money to its "General Purpose School Fund," it failed to apportion the funds with the separate city school system. In holding the county's share of the federal funds, allocated to its school fund, not to be subject to the provisions of T.C.A. § 49–3–315, our Supreme Court stated:

"By its very phraseology, this statute cannot be applicable to Federal Revenue

---

**1.** T.C.A. § 49–3–302(14) provides:

" 'Local education agency' or 'LEA' means any county, city, or special school district, unified school district, school district of any metropolitan form of government or any other school system established by law...."

**2.** T.C.A. § 49–3–302(21) provides:

" 'Weighted full-time equivalent average daily attendance' or 'WFTEADA' means one (1) full-time equivalent average daily attendance multiplied by the cost differential...."

Sharing Funds, the source of which is the Federal Government. Money received from the Federal Government obviously is not money received from a state, county, or other political *subdivision.* The political facts of life are that the Federal Government is in no sense a 'political subdivision.'

"The apportionment provision for '[a]ll school funds for current operations and maintenance purposes collected by any county' simply refers to all funds collected or received from the state, county, or other political subdivision. It adds nothing to the scope and extent of the definition of the funds embraced within the statute.

"Section 49–605 [now, § 49–3–315], T.C.A., embraces all funds received from the state, raised by local taxation, or derived from appropriate bond issues. It is inapplicable to Federal Revenue Sharing Funds, which may or may not be used for school purposes."

Reviewing the statutory language and the *Conger* decision, we agree with the Appellee's contentions and, therefore, affirm the decision of the trial court. Tennessee Valley Authority payments simply are not "revenues … received from the state, county, and other political subdivisions." As the trial court stated in his opinion, "by a Federal creation it (T.V.A.) assumes the characteristics which separate the 'authority' from a 'political subdivision'", as defined in T.C.A. § 49–3–315.

One final point needs to be mentioned. The Appellant, in its brief, argues that T.V.A. has acquired property that otherwise would be subject to local taxation. *See* 16 U.S.C. § 8311 (1970 & Supp.1983) (which states the Congressional purpose for authorizing the T.V.A. to make the in-lieu-of-tax payments). *See also T.V.A. v. Polk County*, 68 F.Supp. 692 (E.D.Tenn. 1945). The Appellant further contends that, had the T.V.A. not acquired the property, the taxation of such property by the county would have resulted in revenues which, under T.C.A. § 49–3–315, when placed in the county's school budget, would

have to be apportioned with the separate city school system. The Appellant would distinguish the situation set out above from that present in *Conger*, where the revenues in question (Federal Revenue Sharing Funds) represented monies collected by the federal government for various taxes and returned to the state with no relationship to or connection with the property tax.

The Appellant's position is worthy of consideration. *Perhaps* these in-lieu-of-tax payments should be treated differently from other federal revenues and similar to local property tax revenues. However, T.C.A. § 49–3–315, as presently written and construed by the *Conger* court, clearly does not permit this court to reach such a conclusion. We suggest, as did the court in *Conger*, "The city's prayer for relief must be addressed to the General Assembly."

The issues are found in favor of the Appellee. The judgment of the trial court is affirmed and the cost of this appeal is taxed to the Appellant.

PARROTT, P.J., and GODDARD, J., concur.