IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 20, 2008 Session

KINA CRIDER, INDIVIDUALLY AND ON BEHALF OF AND AS NEXT FRIEND OF
HER TWO CHILDREN, JAZMYN CRIDER AND PRECIOUS CRIDER; ON
BEHALF OF AND AS NEXT FRIEND OF ALL MINORITY CHILDREN ENROLLED IN
THE PARIS SPECIAL SCHOOL DISTRICT; AND CYNTHIA BOYSON,
INDIVIDUALLY AND ON BEHALF OF AND AS NEXT FRIEND OF HER CHILD,
BREA ROBBINS
v.
THE COUNTY OF HENRY, TENNESSEE

An Appeal from the Circuit Court for Henry County
No. 2358    Donald E. Parish, Judge

_____

No. W2007-02630-COA-R3-CV - Filed December 30, 2008

_____

This case addresses the allocation of funds received by a county from the Tennessee Valley
Authority. The Tennessee Valley Authority is exempted from state taxation, but makes payments
to the county in lieu of taxes. Historically, the county has earmarked these funds for education and
has allocated a portion of them to the special school districts within the county. In 2003, however,
the county decided to phase out the allocation of funds to the special school districts. Subsequently,
the plaintiffs in this action, parents of children in a special school district located in the county, sued
the county, arguing that the county's decision to stop sending funds to the special school district
violated several statutory provisions. The trial court granted summary judgment to the county. The
plaintiffs now appeal. We affirm, concluding that the case is controlled by the decision in *Oak
Ridge City Schools v. Anderson County*, 677 S.W.2d 468 (Tenn. Ct. App. 1984), and that the county
is entitled to summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and
DAVID R. FARMER, J., joined.

Richard L. Dunlap, Paris, Tennessee, and Charles L. Trotter, Huntingdon, Tennessee, for the
appellants, Kina Crider, et. al.

Lee M. Greer, III, Paris, Tennessee, for the appellee, the County of Henry, Tennessee.

**OPINION**

This is the second appeal in this case. The background facts and procedural history are set out in our memorandum opinion in the first appeal, *Crider v. County of Henry*, No. W2005-00223-COA-R3-CV, 2005 WL 2007163 (Tenn. Ct. App. Aug. 19, 2005).

Plaintiff/Appellant Kina Crider ("Ms. Crider") and her children are African-American residents of Henry County, Tennessee. Ms. Crider's children attend the Paris Special School District ("PSSD") located in Henry County ("County"). The PSSD was created by the Tennessee General Assembly in 1919 by private act. *See* 1919 Tenn. Priv. Acts ch. 150. The PSSD is a distinct entity and is not affiliated with the City of Paris, Tennessee. It operates three elementary schools, educating children from kindergarten through the eighth grade, and owns the real property on which the schools are situated. Pursuant to the private act creating it, the PSSD is authorized to impose its own taxes for purposes of funding the PSSD. *See id.* Statistical data indicates that 26% of the students attending the PSSD are minority students. In contrast, 3% of the students attending the County schools in kindergarten through eighth grade are minority students.

The Tennessee Valley Authority ("TVA") was created by the United States Congress with the passage of the Tennessee Valley Authority Act of 1933. *See* 16 U.S.C. § 831 (2004). Congress expressly exempted TVA "from taxation in any manner or form by any State, county, municipality, or any subdivision or district thereof." 16 U.S.C. § 831*l*. Apparently aware that TVA's acquisition of land to use for its operations would deprive local governments of a significant source of property tax revenue, Congress provided as follows:

> In order to render financial assistance to those States and local governments in which the power operations of the Corporation are carried on and in which the Corporation has acquired properties previously subject to State and local taxation, the board is authorized and directed to pay to said States, and the counties therein, for each fiscal year, . . . percentages of the gross proceeds derived from the sale of power by the Corporation for the preceding fiscal year as hereinafter provided, together with such additional amounts as may be payable pursuant to the provisions hereinafter set forth
> . . . .

*Id.* In accordance with this statute, TVA provided funds to the County in lieu of taxes.[1] In turn, the County earmarked these funds for use in funding its school system. In approximately 1986, the County adopted a resolution directing that a portion of the TVA funds be allocated to the PSSD. For the 2002-2003 academic school year, the PSSD received approximately $289,000 from the County. The City of Paris also received payments from the TVA in lieu of taxation; none of the City's funds were used to provide financial assistance to the PSSD.

On June 16, 2003, the County Commission passed a resolution to repeal its prior 1986 resolution to provide funding to the PSSD from funds the County received from the TVA, implementing a plan to "phase out" the funding to the PSSD. For the 2003-2004 school year, the County provided $75,000.00 to the PSSD; for the 2004-2205 school year, it provided $75,000; and

---

[1] For fiscal year 2002-2003, the County received $687,771.00 from TVA, and the County received $829,026.00 from the TVA for fiscal year 2003-2004.

for the 2005-2006 school year, it provided $75,000. No funds were to be provided to the PSSD after the 2005-2006 school year. Thereafter, as a result of the County's action, the PSSD raised its property tax rate from $.23 per $100 of assessed property value to $.46 per $100 of assessed property value. The PSSD also increased its tuition for non-district students from $50 to $100 per academic year.

On July 21, 2005, Ms. Crider, individually, on behalf of her two children, and on behalf of all children enrolled in the PSSD, filed a lawsuit against the County in the Circuit Court of Henry County. After numerous amendments to her complaint, Ms. Crider alleged that the County's actions in eliminating funding for the PSSD from the TVA payments violated certain provisions of the Tennessee Education Finance Act of 1977, codified at section 49-3-301 *et seq.* of the Tennessee Code; the Tennessee Human Rights Act, specifically section 4-21-501 of the Tennessee Code; and certain provisions of the Tennessee Constitution. The County did not file an answer or otherwise respond to Ms. Crider's complaint.

On May 26, 2004, Ms. Crider filed a motion for summary judgment. In support, she filed her statement of material facts and numerous affidavits. On October 27, 2004, the County filed a brief in opposition to Ms. Crider's summary judgment motion. Ms. Crider moved to strike the County's brief, and the motion to strike was denied.

On October 28, 2004, the trial court held a hearing on Ms. Crider's motion for summary judgment. At the conclusion of the hearing, the trial judge told the parties that he was denying Ms. Crider's motion for summary judgment as to all of her claims. On November 23, 2004, the trial court entered an order reflecting its oral ruling. Ms. Crider appealed the denial of her motion for summary judgment. The appeal was dismissed, because the order from which Ms. Crider appealed was not a final order. *See Crider*, 2005 WL 2007163, at *5.

Thereafter, on December 14, 2005, Plaintiff/Appellant Cynthia Boyson, individually and on behalf of her child, Brea Dobbins, and on behalf of and as next friend of all minority children enrolled in the PSSD, was admitted as an additional party plaintiff.[2]

On August 20, 2007, the County filed a motion for summary judgment, along with affidavits in support thereof. The County asserted that no material issues of fact were disputed, and that it was entitled to a judgment as a matter of law on the Plaintiffs' claims for relief.

On September 20, 2007, the trial court heard oral argument on the County's motion for summary judgment. At the conclusion of the hearing, the trial court issued its oral ruling granting the County's motion for summary judgment:

> The plaintiffs base their action on two theories as have been argued this morning . . . [w]hich may be characterized as the statutory allocation theory and the racial discrimination theory.

---

[2]The County did not challenge the Plaintiffs' ability to assert a private right of action.

-3-

As to the allocation theory, summary judgment is granted as a matter of law pursuant to the plain language of TCA 49-3-315, and the opinion of the Court of Appeals in . . . *Oak Ridge [City Schools] v. Anderson County*, 677 S.W.2d 468 [(Tenn. Ct. App. 1984)].

In that case, the Court of Appeals held that the TVA PILOT program, . . . payment in lieu of taxes being the acronym, paid to a County need not be shared with a special school district. It is as close to a spotted cow sort of case to this situation as you'll generally find.

As [to] the plaintiff's theory which sounds in the nature of the appropriation of public funds for the purpose of accomplishing a race-based result, which is the second theory, this requires the Court to make more of a fact-based determination. The Court has essentially a stipulation to the effect that Henry County has chosen to use the payments which it receives from TVA in lieu of taxes to fund the school system of Henry County only and to not share any of those funds with the separate school system operated by the [PSSD].

. . .

The parties ask the court to decide this Motion for the Summary Judgment as to the second theory of invidious race discrimination on the existing record. Accordingly, the Court grants the defendant's Motion for Summary Judgment on the racial discrimination theory, because the plaintiff has failed to support that allegation with any – any material facts that would lead the Court to that conclusion.

Henry County was never under a legal obligation to share the TVA PILOT funds with the [PSSD] and its decision to cease sharing does not, on this record, appear to have been based on any racially discriminatory motive.

Accordingly, the Motion of Henry County for Summary Judgment is granted entirely. Therefore, the defendant's [sic] Motion to Dismiss the Motion of Henry County for Summary Judgment is consequently denied.

Thus, the trial court held that the County was not obliged to use any part of the funds it received from TVA to fund the PSSD, citing ***Oak Ridge Schools v. Anderson County***, 677 S.W.2d 468 (Tenn. Ct. App. 1984), in support of its conclusion. In addition, the trial court held that the Plaintiffs had submitted insufficient evidence to support the allegation that the County's decision to cease funding the PSSD was motivated by racial discrimination. On November 9, 2007, the trial court entered an order incorporating its oral ruling. From this order, the Plaintiffs now appeal, challenging the trial court's grant of summary judgment in favor of the County.

On appeal, the Plaintiffs argue that the grant of summary judgment was not appropriate because the County's adoption of the June 16, 2003 resolution to phase out the sharing of TVA PILOT (payment in lieu of taxes) funds violated (1) the Education Reform Act of 2001, in particular

Sections 49-3-352 and 49-3-354 of the Tennessee Code Annotated;[3] and (2) the Paris Special School District Private Acts of 1919, Chapter No. 150, as amended, House Bill No. 281.[4]

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We must view the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Warren*, 954 S.W.2d at 723 (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Once the moving party demonstrates that no genuine issues of material fact exist, the non-moving party must demonstrate, by affidavits or otherwise, that a disputed issue of material fact exists for trial. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

We first address the Plaintiffs' argument that the County's refusal to share TVA PILOT funds with the PSSD violates Tennessee Code Annotated §§ 49-3-352 and 49-3-354. In analyzing this issue, it is instructive to review the law as it existed before the passage of these statutes.

Chapter 3 of Title 49 of the Tennessee Code Annotated addresses "Finances" for education. Under the statutory scheme, a Local Education Agency ("LEA") is defined as "any county, city, or special school district, unified school district, school district of any metropolitan form of government or any other school system established by law." T.C.A. § 49-3-302(11) (2002). Tennessee Code Annotated § 49-3-315, referred to as "the apportionment statute," sets out how each LEA is to distribute the funds it receives for education:

> (a) For each LEA there shall be levied for current operation and maintenance not more than one (1) school tax for all such grades as may be included in the LEA. Each LEA shall place in one (1) separate school fund all school revenues for current school operation purposes received from the state, county and other political subdivisions, if any. . . . All school funds for current operation and maintenance purposes collected by any county . . . shall be apportioned by the county trustee among the LEAs therein on the basis of the WFTEADA [weighted full-time equivalent average daily attendance] maintained by each, during the current school year. . . .

T.C.A. § 49-3-315(a) (2002). The statute describes in detail the manner in which such funds must be appropriated. *See* T.C.A. § 49-3-315(b), (c).

---

[3] These statutes were actually part of the Education Improvement Act of 1992.

[4] On appeal, the Plaintiffs do not challenge the trial court's grant of summary judgment to the County on their theory of recovery based on racial discrimination.

In *Oak Ridge City Schools v. Anderson County*, cited by the trial court below, the plaintiff city school system was located within the defendant county. The city school system filed a declaratory judgment action against the county, seeking a declaration that the county was required to pay the city school system its *pro rata* share of the TVA PILOT received by the county. In support of its claim, the city cited the mandatory language in the apportionment statute quoted above, specifically relying on the provision that "[a]ll school funds . . . collected by any county . . . *shall* be apportioned by the county trustee among the LEAs therein . . . ." T.C.A. § 49-3-315 (emphasis added). *Oak Ridge*, 677 S.W.2d at 469. The trial court dismissed the plaintiff city school system's complaint. It found that TVA was a federal entity, and therefore that funds paid to the defendant county were not "received from the state, county [or] political subdivision." *Id.* The city school system appealed, arguing that the statute mandated that the funds be allocated among the school districts in the county based on their average daily attendance. *Id.* at 470. The appellate court disagreed with the position of the city school system, relying on *Conger v. Madison County*, 581 S.W.2d 632 (Tenn. 1979), in which the Tennessee Supreme Court held that the statute required the apportionment of funds only when the funds were received by the county "from the state, county and other political subdivisions . . . ." *Oak Ridge*, 677 S.W.2d at 470-71. The reasoning in *Conger* was quoted in *Oak Ridge*:

> By its very phraseology, this statute [§ 49-605, now § 49-3-315] cannot be applicable to Federal Revenue Sharing Funds, the source of which is the Federal Government. Money received from the Federal Government obviously is not money received from a state, county, or other political *subdivision*. The political facts of life are that the Federal Government is in no sense a "political subdivision."

> The apportionment provision for "[a]ll school funds for current operations and maintenance purposes collected by any county" simply refers to all funds collected or received from the state, county, or other political subdivision. It adds nothing to the scope and extent of the definition of the funds embraced within the statute.

> Section 49-605 [now, § 49-3-315], T.C.A., embraces all funds received from the state, raised by local taxation, or derived from appropriate bond issues. It is inapplicable to Federal Revenue Sharing Funds, which may or may not be used for school purposes.

*Id.* (quoting *Conger*, 581 S.W.2d at 639) (emphasis in original). Thus, following the reasoning in *Conger*, the *Oak Ridge* court held that the apportionment statute did not require the county to allocate the TVA PILOT funds among the schools because the funds were received from the federal government, not from a "state, county [or] other political subdivision" of the State. *Id.*

Notably, the city school system in *Oak Ridge* argued that its situation was distinguishable from that in *Conger* because the TVA PILOT funds were derived from federally acquired property that otherwise would have been subject to local taxation. The TVA PILOT funds represented property tax revenues that would have been paid had TVA not acquired the property; hence the funds should not be treated as "federal funds," but should be treated in effect as local property tax revenues under the apportionment statute. The *Oak Ridge* court rejected this argument, finding that the plain

-6-

language in the statute did not permit such an interpretation, and that, for purposes of apportionment, the TVA PILOT funds were received from the federal government. As did the Supreme Court in *Conger*, the *Oak Ridge* court suggested that "[t]he city's prayer for relief must be addressed to the General Assembly." *Id.* at 471. Accordingly, the appellate court in *Oak Ridge* affirmed the trial court's dismissal of the Plaintiff's complaint, concluding that the county was not required to share TVA PILOT funds under the apportionment statute. *Id.*

Thus the holding in *Oak Ridge* indicates that funds received by the County from TVA would not be considered to be "received from the state, county [or] other political subdivision," and, therefore, that the County is not obliged under Section 49-3-315(a) to give a portion of those funds to the PSSD. The Plaintiffs argue that the holding in *Oak Ridge* is inapplicable in this case because subsequent legislation, namely Tennessee Code Annotated §§ 49-3-352 and 49-3-354, superseded and repealed by implication the apportionment statute construed in *Oak Ridge*.

Repeal by implication is disfavored, and "courts must resolve any possible conflict between acts in favor of each other 'so as to provide a harmonious operation of the laws.'" *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 60 S.W.3d 65, 74 (Tenn. Ct. App. 2001) (quoting *Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn. 1995)). Keeping in mind this principle of statutory construction, we will examine the statutes upon which the Plaintiffs rely.

We first address Section 49-3-352, enacted in 1992. Section 49-3-352 establishes a "dedicated education fund" within the general fund of each LEA, and governs the management of the dedicated education fund and requires that "[a]ll appropriations from all sources to fund public education will be deposited in [the dedicated education fund] account."[5] T.C.A. § 49-3-352 (2002). Section 49-3-352, then, is not contrary to the apportionment statute; it simply addresses the manner in which a LEA should manage its educational funds.

The Plaintiffs also argue that the apportionment statute construed in *Oak Ridge* was repealed by implication by the enactment of Section 49-3-354(c). By way of background, we note that, in the

---

[5]That statute provides:

(a) There is hereby established within the general fund of each LEA a special revenue account to be known as the "dedicated education fund."

(b) All appropriations from all sources to fund public education will be deposited in this account. Money in the dedicated education fund shall be invested as provided by law.

(c) Any fund balance remaining unexpended at the end of a fiscal year in the general fund of the local public education system shall be carried forward into the subsequent fiscal year. Such fund balance shall be available to offset shortfalls of budgeted revenues or, subject to the provisions of § 49-2-301(b)(1)(W), shall be available to meet unforeseen increases in operating expenses. Any accumulated fund balance in excess of three percent (3%) of the budgeted annual operating expenses for the current fiscal year may be budgeted and expended for any education purposes, but must be recommended by the board of education prior to appropriation by the local legislative body. . . .

T.C.A. § 49-3-352.

Education Improvement Act of 1992, the General Assembly adopted the Basic Education Program ("BEP") funding formula to fund elementary and secondary education, replacing the Tennessee Foundation Program funding formula that had previously been used.[6] To prevent the change in systems from resulting in less money to school systems, the Legislature enacted Section 49-3-354(c):

> (c) Tennessee foundation program appropriations to LEAs for the 1990-1991 school year shall be a base, and no LEA shall receive in subsequent years from the BEP [Basic Education Program] a lesser amount of funds, adjusted for changes in student enrollment, than it received in the 1990-1991 school year under the Tennessee foundation program.

T.C.A. § 49-3-354(c) (2002). The Plaintiffs argue that Section 49-3-354(c) prohibits the County from paying the PSSD less than it did during the 1990-1991 school year, when the PSSD received TVA PILOT funds. Viewed in context, however, Section 49-3-345(c) appears to address an entirely separate issue – the difference between amounts received by LEA under the new BEP, as compared to the amounts received under the former Tennessee foundation program. The statute does not purport to address the overall manner of apportionment. Thus, this provision is likewise not inconsistent with the apportionment statute interpreted in *Oak Ridge*.

In 2001, the Legislature took action to "clean up" the statutory scheme by explicitly repealing certain statutes that had been rendered obsolete as a result of the 1992 replacement of the Tennessee foundation program with the BEP. Despite the Legislature's purposeful action, the appropriation statute was not explicitly repealed. Under all of these circumstances, we must reject the Plaintiffs' argument that the apportionment statute was implicitly repealed by this subsequent legislation.

The Plaintiffs next argue that the holding in *Oak Ridge* is not applicable in this case because Section 5 of the 1919 Private Act that established the PSSD requires that the PSSD receive its *pro rata* share of all school funds, which would include the TVA PILOT funds. Section 5 of the Private Act provides:

> BE IT FURTHER ENACTED, That the County Trustee shall apportion to the said [PSSD], for the maintenance of schools therein, the per capita or prorata share of *all school funds* hereafter in his hands according to the proportion which the school census of said Special School District, bears each year to that of Henry County, and the County Trustee shall apportion said Special School District its prorata share of *the State school fund* paid to said county by the State.

1919 Tenn. Priv. Acts ch. 150, sec. 5 (emphasis added). The Plaintiffs argue that this language in the Private Act requires that, once the County decides to use the TVA PILOT funds for education, those funds then become "school funds" that must be apportioned to the PSSD under the 1919 Act.

---

[6]The differences in these funding formulas are irrelevant to the issues on appeal.

We reject this argument for several reasons. First, it was not made to the trial court in opposition to the County's motion for summary judgment. Ordinarily, "issues not raised at trial may not be raised for the first time on appeal." *State Dep't Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Regardless, the plain language of the 1919 Act applies only to school funds "paid to said county by the State." Hearkening back to the *Oak Ridge* case, funds "paid . . . by the State" would not include TVA PILOT funds. In any event, interpreting Section 5 of the Private Act to require apportionment of the TVA PILOT funds to the PSSD would create a conflict between the 1919 Private Act and the apportionment statute, a law of general applicability enacted in 1977. It is well-settled that "private acts are held to have been superseded as far as is necessary to give effect to a general statutory plan of statewide applicability." *Strader v. Word*, 508 S.W.2d 539, 547 (Tenn. 1974). Keeping in mind all of these considerations, we must conclude that the 1919 Private Act, requiring apportionment of "all school funds"applies to school funds received from the State, not federal funds received from the TVA as a payment in lieu of taxes. This interpretation gives effect to both the private act and the statute, resulting in a "harmonious operation of the laws." *Knox County*, 60 S.W.3d at 74 (quoting *Cronin*, 906 S.W.2d at 912). Consequently, we must reject the Plaintiffs' argument that Section 5 of the 1919 Private Act requires that the County appropriate to the PSSD its *pro rata* share of TVA PILOT funds.

In sum, we conclude, as did the trial court, that the reasoning in *Oak Ridge* is directly applicable to the instant case. Thus, Henry County is not required to share TVA PILOT funds with the PSSD, because those funds were not received from the "state, county [or] other political subdivision." Therefore, the trial court did not err in granting summary judgment to the County on the Plaintiffs' challenge to the County's resolution to phase out the sharing of TVA PILOT funds.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellants Kina Crider and Cynthia Boyson and their sureties, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE