# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 6, 2000 Session

## KNOX COUNTY EDUCATION ASSOCIATION v. KNOX COUNTY BOARD OF EDUCATION, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 135371-1     John F. Weaver, Chancellor**

**FILED FEBRUARY 2, 2001**

**No. E2000-01019-COA-R3-CV**

This is an action brought by the Knox County Education Association seeking a declaratory judgment and injunctive relief against the Knox County Board of Education and its then-superintendent, Allen Morgan. The trial court found that provisions of a private act granting tenure to principals employed in the Knox County School System were repealed and superseded by the enactment in 1992 of a public act, the Education Improvement Act, and that the private act, to the extent that it conflicts with the general law, violates Article XI, Section 8 of the Tennessee Constitution. The trial court further found that Knox County principals are not members of the bargaining unit represented by the Knox County Education Association as to the subjects of performance, accountability, and contract renewal. The Knox County Education Association appeals, arguing (1) the trial court erred in finding that provisions of the private act were repealed by the Education Improvement Act and (2) the trial court erred in concluding that school principals are not members of the bargaining unit as to the subjects of performance, accountability, and contract renewal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Richard L. Colbert and Kurtis J. Winstead, Nashville, Tennessee, for the appellant, Knox County Education Association.

Martha Haren McCampbell, Knoxville, Tennessee, for the appellees, Knox County Board of Education and Allen Morgan, Superintendent of Knox County Schools.

## OPINION

## I. *General Overview*

The Knox County Education Association ("the KCEA") is the recognized professional employees' organization representing all certified employees of the Knox County School System. The Knox County Board of Education ("the Board") manages and controls the public schools in the Knox County School System. The defendant Allen Morgan, as the Superintendent, was the chief administrative official of the Knox County School System at the time this action was commenced.[1]

The Legislature enacted Chapter 18 of the Tennessee Private Acts of 1937 ("the Private Tenure Act"), a private act that the parties agree is applicable to Knox County. The Private Tenure Act, as amended[2], provides that "civil service or permanent tenure" applies to all *principals*, teachers, supervisors of instruction, clerks, and secretaries employed by the local board of education upon four years of service and that such tenured employees may not be suspended, demoted or discharged from service except for inefficient service, neglect of duty, or improper conduct. The Private Tenure Act further provides that a tenured employee may not be dismissed, discharged, demoted or changed from one position or class to another position or class at a reduced salary, unless and until charges as specified by the private act, as amended, have been filed and sustained against the employee. When Knox County adopted its charter in 1988, the Private Tenure Act was adopted as a part of that foundation document.

The Legislature enacted a public act, the Teacher Tenure Act, T.C.A. § 49-5-501, *et seq.* in 1951. The Teacher Tenure Act provides that a teacher may be dismissed for incompetence, inefficiency, neglect of duty, unprofessional conduct or insubordination, T.C.A. § 49-5-511(a)(2) (Supp. 2000), and that a teacher may be transferred from one location or type of work to another for which the teacher is qualified, provided the transfer is made in accordance with board policy and any locally negotiated agreement. T.C.A. § 49-5-510 (Supp. 2000). The term "teacher" includes principals, supervisors, superintendents, and other certificated personnel. T.C.A. § 49-5-501(10) (1996). However, the Teacher Tenure Act specifically provides that it has no effect upon the operation of local or private tenure acts already in existence, T.C.A. § 49-5-502(b)(1) (1996), such as the Private Tenure Act applicable to Knox County.

The controversy in this case stems from the fact that, in 1992, the Legislature enacted the Education Improvement Act ("the EIA"), 1992 Tenn. Pub. Acts ch. 535, which amended various provisions of Titles 8 and 49 of the Code. The EIA, among other things, abolished the elected office of county school superintendent and replaced it with an appointed superintendent or "director of schools", who would be directly employed by the local board of education. T.C.A. § 49-2-301(d) (Supp. 2000). The EIA took effect on July 1, 1992; however, superintendents who had been elected and were in office on that date were allowed to complete their terms. T.C.A. § 49-2-301(c) (Supp.

---

[1]The present appointed Superintendent of Knox County Schools is Dr. Charles Lindsey.

[2]The Private Tenure Act was amended by 1945 Tenn. Priv. Acts ch. 345.

2000). Superintendent Morgan completed his elected term of office and began serving as an appointed superintendent on September 1, 1996.

The EIA vests in the appointed superintendent powers that previously had been reserved for the local boards of education. Significantly, the superintendent is empowered to fill the position of principal for schools under the superintendent's jurisdiction. T.C.A. § 49-2-303(a)(1) (1996). The EIA provides that each principal's employment contract must be in writing, that it may not exceed the contract term of the superintendent, and that it may be renewed. *Id.* The contracts are required to include performance standards and to provide for written evaluations by the superintendent. *Id.* Reasons for non-renewal of a contract include inadequate performance, as determined by the written evaluations. *Id.* The EIA further provides that a principal who has tenure as a teacher retains the rights of that tenure. *Id.*

In 1997, Superintendent Morgan presented employment contracts to all principals in the Knox County School System, which contracts provided, in pertinent part, as follows:

> This contract may be renewed, but such renewal shall not extend the ending date past the ending date in the superintendent's employment contract. The superintendent may nonrenew the contract for any reason deemed appropriate, except that such nonrenewal shall not be based on discriminatory reasons. The superintendent shall inform the principal of such nonrenewal on or before May 15 of the year in which the contract expires.
>
> *       *       *
>
> This contract may be unilaterally terminated by the superintendent for inadequate performance or for any of the causes listed in Tennessee Code Annotated, Title 49, Part 5. A principal with tenure whose contract is terminated under this section shall be transferred to another professional position for which he is licensed and qualified. Nothing in this contract shall be construed to prevent the board from terminating a tenured principal from employment for cause.

The KCEA brought this action, seeking (1) a declaration that the Private Tenure Act, as amended, and the Knox County Charter govern the rights, privileges and tenure status of employees of the Knox County School System; (2) a declaration that the employment contract proposed by Superintendent Morgan to the principals of Knox County violates the principals' rights under the Private Tenure Act as well as under the Education Professional Negotiations Act, T.C.A. § 49-5-601, *et seq.*; (3) an injunction enjoining the Board of Education and Superintendent Morgan from insisting upon the execution of the employment contract as a condition of continued employment with the Knox County School System; (4) a declaration that the principals of the Knox County School System are members of the bargaining unit represented by the KCEA and are entitled to all

the benefits of the Memorandum of Agreement negotiated between the Board and the KCEA; and (5) an injunction prohibiting the Board or Superintendent Morgan from attempting to require principals to give up any benefits of the Memorandum of Agreement as a condition of continued employment as principals.[3]

Following a bench trial, the court below filed its memorandum opinion, in which it found that the employment contract presented to Knox County principals is valid. The court declared that the provisions of the Private Tenure Act relating to the tenure rights of employees as *principals* conflict with the EIA and therefore were repealed and superseded by the latter general law. The court found no reasonable basis for treating principals in Knox County differently from principals in other parts of the state; therefore, it concluded that the Private Tenure Act, to the extent that its provisions are inconsistent with the EIA, is invalid under Article XI, Section 8 of the Tennessee Constitution. It further found that because a principal's rights are statutory and therefore may be rescinded without compensation, the power of superintendents to nonrenew a principal's contract under the EIA does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Finally, the trial court found that principals are members of the bargaining unit represented by the KCEA for all purposes except for performance, accountability, and contract renewal. This appeal followed.

## II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R. App. P. 13(d). We must honor that presumption unless we find that the evidence preponderates against the trial court's factual findings. **Union Carbide Corp. v. Huddleston,** 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not accorded the same deference. **Campbell v. Florida Steel Corp.,** 919 S.W.2d 26, 35 (Tenn. 1996).

## III. *Applicable Law*

For the convenience of the reader, the text of the pertinent provisions of the Private Tenure Act, the Teacher Tenure Act, and the Education Improvement Act are set out below. The Private Tenure Act provides, in pertinent part, as follows:

*Section 1*

---

[3]The KCEA also alleged in its complaint that certain personnel policies adopted by the Board on March 5, 1997, pertaining to the tenure rights of *teachers* violate the Private Tenure Act and the Knox County Charter. The trial court found that these policies did in fact violate the tenure rights of teachers as provided by the Private Tenure Act and the Charter. It therefore enjoined the Board and the Superintendent from applying and enforcing these personnel policies. That holding is not a subject of this appeal.

That all counties of this State having a population of not less than 155,000 and not more than 157,000 according to the Federal Census of 1930 or any subsequent Federal Census, civil service or permanent tenure shall apply to all employees of the Boards of Education of the counties coming within the provisions of this Act occupying the positions of principals, teachers, supervisors of instruction, clerks and secretaries, provided, that no persons occupying the positions of principals, teachers, supervisors of instruction, clerks and secretaries, shall be under civil service or permanent tenure unless and until they have been employed by the Boards of Education of said counties for the fourth year from the time of their employment....

## Section 2

That neither the Board of Education, nor any member thereof, nor the Superintendent of Schools, nor any other official of the Boards of Education of Department of Education of any of the counties coming within the provisions of this Act, shall have any right to discharge, suspend, demote, or change any employee made subject to civil service or permanent tenure by the provisions of this Act, from one position or class to another position or class with the Department of Education of said counties at a reduced salary, unless and until charges as specified herein shall have first been filed and sustained against such employee in the manner herein provided.

## Section 3

That employees under civil service or permanent tenure by the provisions of this Act may be suspended, demoted, or discharged from service for inefficient service, neglect of duty, or improper conduct, in the following manner:
(a) The Superintendent of Schools or any Supervisor of schools, or any principal, or any ten patrons of the school in question may prefer charges against any such employee....
(b) After preferment and filing of charges as above set out, the employee charged shall be entitled to a hearing before the Board of Education....
(c) Either party dissatisfied with the decision of the Board of Education shall have the right of appeal therefrom to the Chancery Court of the County in which such hearing is held within ten days after receipt of notice of the decision of the Board of Education by the employee charged, except in cases of demotion only, in which cases

the decisions of the Board of Education shall be final and no appeal shall be allowed....

The Teacher Tenure Act provides, in pertinent part, as follows:

*T.C.A. § 49-5-501(10) (1996)*

"Teacher" includes teachers, supervisors, principals, superintendents and all other certificated personnel employed by any local board of education, for service in public, elementary and secondary schools in Tennessee, supported in whole or in part by state or federal funds.

*T.C.A. § 49-5-502(b) (1996)*

This part shall not affect the operation of local or private tenure acts in operation on March 1, 1951, applying to counties, municipalities or special school districts.

*T.C.A. § 49-5-510 (Supp. 2000)*

The superintendent, when necessary to the efficient operation of the school system, may transfer a teacher from one location to another within the school system, or from one type of work to another for which the teacher is qualified and licensed; provided, that transfers shall be acted upon in accordance with board policy and any locally negotiated agreement.

*T.C.A. § 49-5-511(a)(2) (Supp. 2000)*

The causes for which a teacher may be dismissed are as follows: incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination....

The Education Improvement Act provides, in pertinent part, as follows:

*T.C.A. § 49-2-203(a)(1) (Supp. 2000)*

It is the duty of the local board of education to:
(1) Elect, upon the recommendation of the superintendent, teachers who have attained or are eligible for tenure and fix the salaries of and make written contracts with such teachers....

*T.C.A. § 49-2-301(d) (Supp. 2000)*

In place of the abolished office of county superintendent of public instruction, each local board of education is authorized to employ a director of schools, as provided for in § 49-2-203, subject to requirements of law. This director of schools may be referred to as "superintendent" but all references to or duties or powers of the former county superintendents of public instruction shall be deemed to be references to or powers or duties of the director of schools. Failure to change a reference to "county superintendent" to "superintendent" or "director of schools" shall not be deemed to continue to revive the former office of position of county superintendent, it being the intention herein to convert the former elected office of superintendent of public instruction to an administrative position filled by the applicable local board of education.

*T.C.A. § 49-2-301(f)(1)(EE) (Supp. 2000)*

It is the duty of the board of education to assign to its superintendent the duty to:
                    *       *       *
(EE) Within the approved budget and consistent with existing state laws, board policies and locally negotiated agreements covering licensed personnel, to employ, transfer, suspend, non-renew and dismiss all personnel, licensed or otherwise, except as provided in § 49-2-203(a)(1) and in chapter 5, part 5 of this title [which includes the Teacher Tenure Act]. Nothing in this subdivision shall be construed to alter, diminish, or supersede the Education Professional Negotiations Act, compiled in chapter 5, part 6 of this title.

*T.C.A. § 49-2-303(a)(1) (1996)*

Each local superintendent shall employ principals for the public schools. The employment contract with each principal shall be in writing, shall not exceed the contract term of the current superintendent, and may be renewed. The contract shall specify duties other than those prescribed by statute and shall include performance standards and require periodic written evaluations by the superintendent to be conducted in the manner and with the frequency that the superintendent determines proper. Reasons for the nonrenewal of a contract may include, but are not limited to, inadequate performance as determined by the evaluations. A

principal who has tenure as a teacher shall retain all rights of such status, expressly including those specified in § 49-5-510.

### IV.  Effect of the EIA on the Private Tenure Act

The KCEA argues that the trial court erred in concluding that the EIA repealed the provisions of the Private Tenure Act conferring tenure upon principals in the Knox County School System. First, it argues that the Private Tenure Act is not in conflict with the EIA and therefore was not repealed by implication.  Second, the KCEA contends that a repeal of the tenure status conferred by the Private Tenure Act upon Knox County principals violates due process.  Third, the KCEA argues that the Private Tenure Act is not impermissible special legislation because there is a reasonable basis for the classification.  We will address each of these arguments in turn.

### A.  Repeal by Implication

We begin our discussion with a review of the applicable rules of statutory construction.  The primary goal of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Department of Revenue,* 865 S.W.2d 1, 2 (Tenn. 1993).  Courts are to construe legislative intent "primarily from the natural and ordinary meaning of the language used, *id.*, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distribs., Inc. v. State,* 804 S.W.2d 66, 67 (Tenn. 1991).  If a statute is unambiguous, legislative intent is determined from the face of the statute.  *Carson Creek Vacation Resorts, Inc.,* 865 S.W.2d at 2.  It is not for the courts to question the wisdom of a legislative act.  We "must take statutes as [we] find them." *Tennessee Mfr'd Housing Ass'n v. Metropolitan Gov't,* 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990).

The trial court found that the Private Tenure Act, as it pertains to principals, conflicts with the EIA; the court therefore concluded that the EIA repealed and superseded those provisions of the Private Tenure Act.  Although a private act is superseded as far as is necessary to give effect to a general statutory scheme of statewide application, *Kentucky-Tennessee Clay Co. v. Huddleston,* 922 S.W.2d 539, 542 (Tenn. Ct. App. 1995), repeals by implication are disfavored and are recognized only when no reasonable construction allows the subject acts to stand together. *Cronin v. Howe,* 906 S.W.2d 910, 912 (Tenn. 1995).  A construction that places one act in conflict with another must be avoided; thus, courts must resolve any possible conflict between acts in favor of each other, "so as to provide a harmonious operation of the laws." *Id.*  A repeal by implication is found only when a conflict between the acts is inescapable. *Pacific Eastern Corp. v. Gulf Life Holding Co.,* 902 S.W.2d 946, 954 (Tenn. Ct. App. 1995).

Our review of the pertinent provisions of the Private Tenure Act and the EIA persuades us that there is an inescapable conflict between the two acts.  Under the Private Tenure Act, principals

are employed by the local board of education, whereas the EIA provides that principals are employed by the superintendent. The Private Tenure Act provides that a principal, in his or her capacity as a principal, is eligible for "permanent tenure" upon completion of four years of service; under the EIA, principals are employed under contracts for a definite term, which contracts are subject to renewal or nonrenewal based on a number of factors including the adequacy of the principal's performance, as determined by the superintendent. Inasmuch as the acts provide different standards for the employment and tenure of principals, they cannot be reconciled; therefore, we find that the trial court correctly found that these provisions of the Private Tenure Act pertaining to principals are in conflict with the EIA and, therefore, are repealed by implication.

The KCEA argues that the EIA and the Private Tenure Act are not inconsistent because, so the argument goes, a superintendent's power under the EIA is subject to the Teacher Tenure Act under the provisions of T.C.A. § 49-2-301(f)(1)(EE).[4] Having made this last observation, the KCEA takes its argument one step further and focuses on that provision of the Teacher Tenure Act reciting that the latter act "shall not affect the operation of local or private tenure acts." *See* T.C.A. § 49-5-502(b) (1996). The KCEA concludes from this that the superintendent is precluded from employing, transferring, suspending, non-renewing or dismissing Knox County personnel in a manner contrary to Knox County's Private Tenure Act. We disagree with the KCEA's interpretation of T.C.A. § 49-2-301(f)(1)(EE). As pertinent here, that statute simply provides that a superintendent's personnel decisions must conform to the Teacher Tenure Act. In our judgment, the requirement of compliance with the Teacher Tenure Act found in the EIA, *see* T.C.A. § 49-2-301(f)(1)(EE), contemplates compliance with the substantive provisions of the Teacher Tenure Act. In construing the statutes under discussion, we cannot strain the EIA's "except as provided in" language to bootstrap and include a subtle trumping of the EIA by Knox County's Private Act. Simply stated, we do not believe that a fair construction of the EIA and the Teacher Tenure Act can lead to the construction urged by the KCEA. We believe that had the Legislature intended for private tenure acts touching upon the employment and tenure of principals to be unaffected by the enactment of the EIA, it would have explicitly stated just that, *i.e.*, that the EIA would not apply to counties under private acts with contrary provisions. In fact, the Legislature made no explicit exception to the scope of the EIA and we decline to read one into the statutory scheme via the strained construction urged by the KCEA.

The KCEA also argues that a repeal by implication of principals' tenure rights under the Private Tenure Act results in lesser rights being afforded to Knox County principals than are afforded principals who have tenure as teachers under the Teacher Tenure Act. It contends that, if the Private Tenure Act is repealed, Knox County principals would not be protected from transfers that are arbitrary and capricious, politically motivated, or otherwise improper. We disagree.

---

[4] In its brief, the KCEA refers to this provision as T.C.A. § 49-2-301(f)(31). The statute was amended in 1998, however, and was renumbered as § 49-2-301(f)(1)(EE). The 1998 amendment also added the following sentence: "Nothing in this subdivision shall be construed to alter, diminish, or supersede the Education Professional Negotiations Act, compiled in chapter 5, part 6 of this title." Otherwise, the statute is substantively the same.

A superintendent's power to transfer personnel under the EIA is subject to T.C.A. § 49-5-510, which protects teachers from arbitrary and capricious transfers and from transfers that are politically or otherwise improperly motivated. *See* ***Springer v. Williamson County Bd. of Educ.,*** 906 S.W.2d 924, 926 (Tenn. Ct. App. 1995). Under the EIA, a principal who is dismissed as a principal retains the rights of tenure as a teacher, which rights expressly include those specified in § 49-5-510. *See* T.C.A. § 49-2-303(a)(1). Therefore, we conclude that Knox County principals – like all other principals in the state – are protected under the EIA from transfers that are arbitrary and capricious, politically motivated or otherwise improper. The Association's argument is without merit.

## B. Due Process

The KCEA argues that a "tenured principal's property interest in continued employment as a principal cannot be taken away without the protections of procedural due process, namely notice and an opportunity for a hearing." In support of its argument, the Association cites four United States Supreme Court cases, all of which deal with due process in the context of determinations of individual eligibility for a statutory entitlement, not in the context of a repeal of or an amendment of a statute conferring such an entitlement. *See, e.g.,* ***Bell v. Burson,*** 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) (suspension of driver's license); ***Goldberg v. Kelly,*** 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (termination of public assistance payments); ***Sherbert v. Verner,*** 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963) (denial of unemployment compensation benefits); ***Speiser v. Randall,*** 357 U.S. 513, 78 S. Ct. 1332, 2 L. Ed. 2d 1460 (1958) (denial of tax exemption). It has been held, in cases analogous to the instant case, that when a legislature enacts a general law repealing or modifying a statutory entitlement, in the absence of any substantive constitutional infirmity, the legislature's determination "provides all the process that is due." ***Atkins v. Parker,*** 472 U.S. 115, 129-30, 105 S. Ct. 2520, 2528-29, 86 L. Ed. 2d 81 (1985) (amendment of welfare benefit statute); ***Hoffman v. City of Warwick,*** 909 F.2d 608, 619-20 (1st Cir. 1990) (repeal of statute conferring enhanced seniority status to veterans). We find the KCEA's procedural due process claim to be without merit.

## C. Suspension of General Law

The trial court found that the Private Tenure Act, insofar as it provides for the employment and tenure of principals in a manner different from that set forth in the EIA, constitutes impermissible special legislation, in violation of Article XI, Section 8 of the Tennessee Constitution, which provisions state, in pertinent part, as follows:

> The Legislature shall have no power to suspend any general law for
> the benefit of any particular individual, nor to pass any law for the
> benefit of individuals inconsistent with the general laws of the land;
> nor to pass any law granting to any individual or individuals, rights,
> privileges, immunitie, [immunities] or exemptions other than such as

may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Article XI, Section 8 is implicated if a local act contravenes some general law of mandatory, statewide application. *Knox County ex rel. Kessel v. Lenoir City,* 837 S.W.2d 382, 383 (Tenn. 1992).

Upon reviewing the EIA, we conclude that the act is one of "mandatory, statewide application" and that the Private Tenure Act, as we have already discussed, contravenes the EIA on the subject of the employment and tenure of principals. Having determined that the Private Tenure Act creates a classification in contravention of general law, we must now determine whether there is a reasonable basis for the classification. If a private act contravenes a general law, it violates Article XI, Section 8 only if no reasonable basis for the discrimination can be found. *Stalcup v. City of Gatlinburg,* 577 S.W.2d 439, 441 (Tenn. 1978); *Brentwood Liquors Corp. of Williamson County v. Fox,* 496 S.W.2d 454, 457 (Tenn. 1973). To withstand scrutiny under this standard, a classification must "have some basis which bears a natural and reasonable relation to the object sought to be accomplished, and there must be some good and valid reason why the particular individual or class upon whom the benefit is conferred, or who are subject to the burden imposed, not given to or imposed upon others, should be so preferred or discriminated against." *State v. Nashville, Chattanooga & St. Louis Ry. Co.,* 124 Tenn. 1, 10, 135 S.W. 773, 775 (1911). The reasons for the classification need not appear on the face of the legislation. *Stalcup,* 577 S.W.2d at 442. The classification will be upheld if any possible reason can be conceived to justify it. *Id.* Whether a classification is reasonable depends upon the particular facts of the case. *Town of Huntsville v. Duncan,* 15 S.W.3d 468, 472 (Tenn. Ct. App. 1999).

In finding no reasonable basis for the subject classification, the trial court found illustrative the testimony of Herman Baker, a high school principal called as a witness for the KCEA, who testified on cross-examination as follows:

> Q       Okay. Thank you.
>         Mr. Baker, under the state law that – the Education Improvement Act of 1992 that led Knox County to create this, principals in other counties and other municipalities that run school systems enter into one of these contracts and can be terminated for inadequate performance –
>
> A       By the superintendent.
>
> Q       – by the superintendent?
>
> A       Yes, ma'am.

> Q      Is there any reason why principals in Knox County should be treated differently than principals in every other county and municipality in Tennessee?
>
> A      Yes, ma'am, Local Private Tenure Act, Knoxville City and Knox County, of which I am tenured. It is my opinion that I am protected by those rights and the supervisor cannot terminate me.
>
> Q      Is there any other reason? Is there anything particular about Knox County or Knox County principals, aside from that Private Tenure Act, that should give them treatment different from every other principal at every other school in Tennessee?
>
> A      Not outside the Private Tenure Act, but we do have that.

Like the trial court, we can conceive of no reasonable basis for treating Knox County principals differently from other principals in the state of Tennessee. Accordingly, we find that the Private Tenure Act violates Article XI, Section 8, to the extent that it conflicts with the general law.

The KCEA argues that a reasonable basis exists for the Private Tenure Act in that at the time the private act was passed, there was no general law providing for the protection of tenure for teachers in the public schools of Tennessee. In support of its argument, it cites *State ex rel. Taylor v. Rasnake,* 209 Tenn. 229, 352 S.W.2d 427 (1961) and *Price v. Webber,* C/A No. 121, 1985 WL 4117 (Tenn. Ct. App. E.S. filed December 6, 1985).[5] The *Rasnake* decision does not support the KCEA's argument because in that case, the Supreme Court found that the private act and the general law were not necessarily inconsistent with each other. *Rasnake,* 209 Tenn. at 234, 352 S.W.2d at 429. In *Price*, an unreported decision of this Court, we found that a reasonable basis existed for an earlier private tenure act affecting Anderson County, which act was found to be in contravention with the Teacher Tenure Act. *Id.* at *5. While acknowledging that "just because [a private act] was passed prior to the general law does not necessarily shield it from constitutional challenge" and that "[i]f and when a general law is finally passed, an inconsistency may arise," *id.* at *4, the Court found that "[s]ince the passage of the Private Act was before the enactment of the general law, we need only look at the overall rational basis of the Private Act's passage, and not look for a rational basis for the inconsistency only." *Id.* at *5. The Court thus concluded that at the time the private act was passed, there was a reasonable basis for the establishment of a tenure system in Anderson County schools, and therefore found no constitutional infirmity. *Id.*

*Price*, a 1985 case, is not the controlling authority in the instant case. This is because, in 1997, the Supreme Court decided the case of *City of Tullahoma v. Bedford County,* 938 S.W.2d

---

[5]The KCEA also cites in its brief a memorandum opinion of this Court; however, Rule 10 of the Rules of the Court of Appeals states that memorandum opinions are not to be cited or relied upon in an unrelated case. Therefore, we will not consider it.

408 (Tenn. 1997). In *City of Tullahoma*, the defendants argued that a private act was not impermissible class legislation because it was enacted prior to the enactment of the general law, the Solid Waste Management Act. The Supreme Court rejected that argument, stating as follows:

> Priority of enactment is not determinative. Bedford County and the clerk do not deny the validity of the Solid Waste Management Act and the several other statutes which set forth a uniform statewide policy regarding the disposition of solid waste. Therefore, the only issue is whether the private act is inconsistent with the general law within the meaning of Article XI, Section 8 of the Tennessee Constitution.

*Id.* at 410 (on petition to rehear). In the instant case, the EIA established a uniform statewide policy regarding the employment and contract renewal of school principals. The Private Tenure Act is inconsistent with the general law. Thus, the issue is not whether a rational basis for the special legislation existed at the time of passage, but whether "there is a reasonable basis for the *discrimination*" created by the special act. *See* ***Brentwood Liquors Corp. of Williamson County,*** 496 S.W.2d at 457 (emphasis added). As we have already discussed, no reasonable basis for the discrimination can be found. The KCEA's argument is found to be without merit.

## V. *Principals as Members of the Bargaining Unit*

Next, the KCEA argues that the trial court erred in concluding that principals in the Knox County School System are not members of the bargaining unit represented by the Association for the purposes of performance, accountability, and contract renewal.

The Education Professional Negotiations Act, T.C.A. § 49-5-601, *et* seq., was enacted in 1978 "to prescribe the legitimate rights and obligations of boards of education and their professional employees...." T.C.A. § 49-5-601(b)(1) (1996). Under the Act, the board of education and the recognized professional employees' organization are required to negotiate in good faith the issues of salaries and wages, grievance procedures, insurance, fringe benefits, working conditions, leave, student discipline procedures, and payroll deductions. T.C.A. § 49-5-611 (1996). An agreement reached under the Act may not include proposals that are contrary to state law. T.C.A. § 49-5-612(a)(1) (1996).

As "professional employees" of the board of education under the Act, principals – at least those who are not designated as management personnel – were considered included in the bargaining unit for the purpose of negotiating with local boards of education. *See* Tenn. Op. Att'y Gen. No. 97-106 (July 28, 1997). With the passage of the EIA, however, superintendents were given the authority to hire, transfer, and not to renew principals' contracts, powers that previously had been held by boards of education. *See* T.C.A. § 49-2-303(a). All other matters related to the employment of principals, remained in the authority of boards of education:

-13-

Under the EIA, principals negotiate with the superintendents – now known as "directors of schools" – regarding matters related to performance, accountability, and contract renewal. Therefore, the bargaining units may not negotiate these matters with the school boards on behalf of the principals.

Other conditions of a principal's employment, however, are still within the prerogative of the local school boards, even under the EIA. Salary ranges, grievance procedures, insurance, fringe benefits, leave, and other working conditions are examples of matters that continue to be set or approved by the school boards. The bargaining units may include principals to negotiate such issues with the school boards.

Tenn. Op. Att'y Gen. 97-106 (July 28, 1997). While the Attorney General's opinion is not binding authority, *see* **Washington County Bd. of Educ. v. MarketAmerica, Inc.,** 693 S.W.2d 344, 348 (Tenn. 1985), we find its reasoning persuasive in the instant case. Reading the two acts together, we conclude that principals are members of the bargaining unit for the purpose of negotiating those aspects of employment still under the control of the Board, while they are not members of the bargaining unit for the purpose of negotiating employment issues that are under the control of the superintendent. Thus, the trial court was correct in finding that principals are not members of the bargaining unit for the purposes of performance, accountability, and contract renewal, which are aspects of principals' employment now covered by the EIA.

## VI. *In Summary*

In summary, the Court holds that the Chancellor was correct in finding that the provisions of the Education Improvement Act of 1992 repeal and supercede the private act applicable to Knox County as to the subjects of a school principal's performance, accountability, and contract renewal.

## VII. *Conclusion*

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded for collection of costs assessed below, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE