IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2012 Session

## SHANETTE COLLIER CHANDLER
v.
## KYLAN CHANDLER

**Appeal from the Circuit Court of Shelby County**
**No. CT-006503-04     James F. Russell, Judge**

**No. W2010-01503-COA-R3-CV - Filed June 26, 2012**

This post-divorce appeal involves parenting issues. The parties had one child; they divorced in 2005. Initially, the mother was designated as the primary residential parent. The father filed a petition for modification, seeking to be designated as primary residential parent. The modification petition cited, *inter alia*, the mother's attempts to frustrate the father's visitation and alleged physical assaults by the mother. The trial court entered an order temporarily designating the father as primary residential parent and requiring that the mother's visitation be supervised. The mother's attorney was to supervise her client's visitation, but was disqualified after it was alleged that the attorney failed to supervise the visitation. After a three-day hearing, the trial court granted the father's petition to modify and held the mother in contempt for the unsupervised parenting time. The mother now appeals, representing herself. The trial court declined to approve the mother's proposed statement of the evidence because a court reporter was present at the trial, citing the provision in Rule 24 of the Tennessee Rules of Appellate Procedure indicating that an appellant is to have a transcript prepared where a stenographic report is available. The mother proceeded with the appeal with neither a transcript nor a statement of the evidence. We vacate the finding of criminal contempt because the record does not show that the mother was advised of her right to appointed counsel on the contempt. We also vacate the award of attorney fees and expenses insofar as it relates to the vacated contempt finding, and affirm as to the remainder of the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated
in Part, Affirmed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Shanette Collier Chandler, Memphis, Tennessee for Plaintiff/Appellant, self-represented

Christopher S. Campbell and Margaret R. Johnson, Memphis, Tennessee for Defendant/Appellee Kylan Chandler

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

This is the second appeal in this case.[1]  Plaintiff/Appellant Shanette Collier Chandler ("Mother") and Defendant/Appellee Kylan Chandler ("Father") were divorced in November 2005.  The parties have one child, a son born in 2002.  In the permanent parenting plan in the divorce decree, Mother was designated as the primary residential parent and Father was awarded parenting time on alternate weekends and holidays.  Father appealed.  This Court affirmed the designation of Mother as the primary residential parent in June 2007.

Meanwhile, in January 2007, Father filed a petition to modify the parenting plan,  seeking to be designated as primary residential parent and also to hold Mother in civil and criminal contempt.  The petition alleged a material change of circumstances, including Mother's physical assault on the child's paternal grandmother.  While Father's petition was pending, it was amended twice.  The first amendment  asserted that Mother fraudulently sent several letters to make it appear that Father had threatened Mother, in order to procure an order of protection against Father and interfere with Father's parenting time.  The second amendment was based on an incident at the son's basketball practice in which Mother allegedly initiated a physical altercation with Father in the presence of the son.  Mother was arrested as a result of this incident.

After this incident, the trial court held a hearing.  After the hearing, Father was temporarily designated as the primary residential parent.  Mother was limited to eight hours of supervised parenting time per week.  For reasons that are not clear in the record, the parties consented to the supervision of Mother's parenting time by her attorney at the time, Venita Martin ("Ms. Martin").

After this, it appears that Father hired a private investigator to verify Ms. Martin's supervision of Mother's parenting time.  The investigator reported that, on one occasion, Ms.

---

[1]Father appealed this custody determination in February 2006. ***See Chandler v. Chandler***, No. W2006-00493-COA-R3-CV, 2007 WL 1840818, at *2 (Tenn. Ct. App. June 28, 2007).  The trial judge who issued the divorce decree was Judge D'Army Bailey.  After Judge Bailey retired from the bench, the case was assigned to the current trial judge, Judge James F. Russell.

Martin left the parties' son in the care of Mother for several hours unsupervised.[2] Father filed a petition to hold Mother in civil and criminal contempt, based in part on her disobedience of the order on supervision of her parenting time. The trial court later disqualified Ms. Martin from representing Mother, because Father's contempt allegation resulted in Ms. Martin becoming a material witness. The trial court held that allowing Ms. Martin to continue as Mother's attorney would improperly place her in the role of both witness and advocate. From that point forward, Mother represented herself.

The trial court held a hearing on the pending motions over three consecutive days, May 10-13, 2010. Over a dozen witnesses testified, including Father and Mother, and over thirty exhibits were introduced into evidence. Apparently a court reporter was present at the hearing.

On the afternoon of May 13, 2010, after the proof had concluded, the trial court rendered a detailed oral ruling. While the appellate record does not include a transcript of the proof presented at the hearing, it includes a transcript of the trial court's oral ruling. In its ruling, the trial court recounted evidence in the form of witness testimony and exhibits, demonstrating that Mother had repeatedly engaged in behavior designed to frustrate Father's parenting time and that she had initiated physical assaults on Father and other family members, sometimes in the presence of the parties' child. After reviewing and commenting on this evidence, the trial court stated: "This record is replete with proof substantiating the allegations in the several petitions brought by [Father] and demonstrate an abject rejection on the part of [Mother] of any willingness whatsoever to foster a positive relationship between the child of these parties and his father." It found "an abundance of evidence in this record to support all of the allegations of the [Father's] original petition [to modify] and each subsequent [amended] petition in terms of frustrated parenting time." The trial court capsulized the evidence: "To take the proof in this case in the whole, witness after witness after witness together with the host of exhibits . . . has painted a picture of a mother who has a proclivity for physical violence and complete dishonesty." It reiterated that "the evidence is abundant that paints a picture of this mother as a dishonest person. She has been dishonest with the father, she has been dishonest with this Court, and she has been dishonest with other tribunals . . . ." The trial court recited from Tennessee Code Annotated § 36-6-404(b),[3] which lists factors to be considered in making parenting plan decisions, placing particular emphasis on subsection (3) (willingness of the parent to facilitate a close and continuing parent-child relationship with the other parent) and subsection (12) (evidence of physical

---

[2]Mother alleges on appeal that the child's maternal grandmother was present at this visit.

[3]In its oral remarks, the trial court referred to Section 36-6-404(a), but actually quoted from Section 36-6-404(b).

abuse to the other parent or to others). The trial court found that Father had proven a substantial and material change in circumstances and concluded that "it is in the manifest best interests of the parties' minor child . . . that Father be designated as the primary residential parent."

With respect to Father's contempt allegations, the trial court found that Mother's former attorney, Ms. Martin, picked up the child from Father, delivered the child to Mother for her parenting time, and then "left the child alone with the mother only to return hours later to retrieve the child." The trial judge commented: "In essence, this mother's then-attorney became a co-conspirator with the mother to circumvent the clear order of this Court." The trial court found Mother in willful contempt for exercising unsupervised parenting time, contrary to the trial court's order. Mother was sentenced to ten days in jail, suspended indefinitely, provided Mother was not brought into court again, presumably for similar misconduct. It declined to hold Mother in contempt for frustrating Father's parenting time. The trial court acknowledged that it was tempted to suspend Mother's parenting time but instead ordered Mother to undergo intense therapy and counseling for anger management and parenting.

Mother was ordered to pay Father's attorney fees and the costs. This award included the attorney fees for prosecuting the contempt allegations and the costs associated with the private investigator who observed Mother's unsupervised parenting time. The award totaled over $93,000.

On June 24, 2010, Mother filed a timely notice of appeal. She continued to represent herself on appeal. Several months later, this Court issued a show cause order, directing Mother to show cause why her appeal should not be dismissed for failure to file a transcript, a statement of the evidence, or a notice that no transcript or statement of the evidence would be filed. Tenn. R. App. P. 24 (2011). After Mother asked for additional time, this Court issued an order permitting Mother to file a proposed statement of the evidence with the trial court for its review and allowing Father to file objections to Mother's proposed statement of the evidence.

In her filing, Mother indicated that she was not financially able to purchase a copy of the transcript of the trial court proceedings and therefore was submitting a proposed statement of the evidence based on her memory of the hearing. Mother included in her proposed statement of the evidence numerous documents that were not offered into evidence at the trial court hearing.

Upon receiving Mother's proposed statement of the evidence, this Court noted that it was neither presented to nor approved by the trial court pursuant to Rule 24(f) of the Tennessee Rules of Appellate Procedure and noted also that it included numerous documents that were not part of the evidence in the proceedings below. The matter was remanded to the trial court for correction and supplementation; the trial court was directed to "proceed in accordance with [Rule 24] in modifying or correcting the record to conform to the truth."

On remand, the trial court held that it was improper under the appellate rules for Mother to seek to rely on a statement of the evidence, when "[a] certified shorthand reporter was present for the entire trial" and when a "transcript of the testimony and trial proceedings in fact is available." In its order, the trial court quoted from the advisory comments for Rule 24(c), stating that the rule allowing a statement of the evidence "is available *only* in those situations in which a stenographic report or other substantially verbatim recital or transcript of the evidence is unavailable." Tenn. R. App. P. 24 cmt. (c) (emphasis added by the trial court). The trial court determined that "[a] narrative statement of the evidence is not an elective alternative under Rule 24" and directed the parties to comply with the Rule 24(b) requirement regarding preparation of a transcript of the proceedings. The trial court's order allowed Mother fifteen days to comply. Mother filed nothing further with the trial court.

Mother did not file a transcript of the trial court proceedings with this Court.[4] Her proposed statement of the evidence was not approved by the trial court. Under these circumstances, we consider Mother's appeal based on the technical record, with neither a transcript of the proceedings nor a statement of the evidence.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother presents twelve issues for review;[5] they are reproduced verbatim as follows:

> (1) Whether the trial court erred in modifying the final divor[c]e decree [] to designate Father as the primary residential parent of the minor child [and] awarding supervised visitation to Mother.

---

[4]Mother filed a motion to supplement the appellate record, but it was denied for failure to comply with Rule 22(a) of the Tennessee Rules of Appellate Procedure.

[5]Mother raised three additional issues in her reply brief. As issues on appeal must be listed in the appellant's initial brief, we decline to consider the issues raised in Mother's reply brief. Tenn. R. App. P. 27(a)(4) (2011); *Guth v. Suntrust Bank, Inc.*, No. E2006-00212-COA-R3-CV, 2007 WL 1135488, at *2; 2007 Tenn. App. LEXIS 221, at *4 (Tenn. Ct. App. Apr. 17, 2007) (refusing to consider new or different issues raised in plaintiff's reply brief).

(2) Whether there was a material change of circumstances and modification of the permanent parenting plan was in the minor child's best interest.

(3) Whether the trial court erred in ruling Mother was in co[n]tempt of court when Mother did not willfully or intentionally violate the court order, was not advised of her right to be represented by counsel, was not appointed a lawyer to represent her, where Father and his lawyer said that they did not object to the maternal grandmother supervising the visits, and where there was no evidence that Mother was left alone with the child.

(4) Whether the trial court erred in suspending Mother's visitation with the minor child when there were no allegations that Mother was abusive to the child or neglect[ed] the child or [was] not providing a safe home for the child and Mother was not given a hearing.

(5) Whether the trial court erred in disqualifying Mother's attorney from representing Mother in the case without a proper motion and hearing because Father's motion to disqualify only wanted to keep Mother's counsel from representing Mother at Mother's deposition and the disqualification worked a financial hardship on Mother.

(6) Whether the trial court erred in not allowing Mother's attorney to testify.

(7) Whether the trial court erred in not allowing Ray Glasgow [the GAL] to testify about his observations and interactions with Father, Mother, and the minor child.

(8) Whether the trial court erred in not allowing Mother to introduce documents from the Family Exchange Center, where the parties were ordered to exchange the child by the first trial judge where those documents show that Father received his visits, was uncooperative, dishonest, manipulative, and threatened workers at the exchange center.

(9) Whether the trial court erred by allowing evidence and testimony on allegations made in other courts or prior to the petition being filed that were presented to a prior court or resolved with the trial court Judge D'Army Bailey.

(10) Whether the trial court erred in allowing testimony on allegations that were dismissed and found not to be true by [a] criminal court judge.

(11) Whether the trial court erred in ruling that all outstanding petitions [were] resolved.

(12) Whether the trial court erred in ordering Mother to pay Father's attorneys fee[s] of more than $80,600.

The issues raised by Mother focus on five major challenges: the trial court's modification of the parenting plan, its finding that Mother was guilty of criminal contempt, the admissibility of certain exhibits and testimony, the disqualification of Mother's attorney, and the order requiring Mother to pay Father's attorney fees. In each of these areas, the trial court is vested with broad discretion that is not subject to reversal on appeal unless the appellate record shows that the trial court abused its discretion. *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 113 (Tenn. 2011) ("The decision whether to award attorney's fees is within the sound discretion of the trial court."); *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) ("[T]he admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record."); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001) ("A trial court's ruling on attorney disqualification . . . will be reversed only upon a showing of an abuse of discretion.")); *Brown v. Brown*, No. E2012-00421-COA-R3-CV, 2012 WL 1267872, at *4; 2012 Tenn. App. LEXIS 237, at *11 (Tenn. Ct. App. Apr. 13, 2012) "[T]rial courts are vested with broad discretion [on child custody determinations], and appellate courts will not interfere with the trial court's decision except upon a showing of erroneous exercise of that discretion."); *Wilkinson v. Wilkinson*, No. M2010-00026-COA-R3-CV, 2011 WL 5986405, at *4; 2011 Tenn. App. LEXIS 642, at *9-10 (Tenn. Ct. App. Nov. 29, 2011) (quoting *Brooks v. Brooks*, No. M2007-00351-COA-R3-CV, 2009 WL 928283, at *8; 2009 Tenn. App. LEXIS 305, at *26 (Tenn. Ct. App. Apr. 6, 2009)) ("[A]ppellate courts . . . will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt . . . . [and] review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review.").

This matter was decided by the trial court in a bench trial. Therefore, the trial court's findings of fact are reviewed *de novo* on the record, with a presumption that those findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d)(2011). A trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005).

ANALYSIS

At the outset, we address the record presented to us on appeal. After this Court remanded the case for preparation of a proper statement of the evidence, Mother filed a proposed statement of the evidence. Among numerous other problems, Mother's proposed statement of the evidence included a host of extraneous documents not admitted into the evidence at trial.

In response, the trial court entered an order in which it noted that a "certified shorthand reporter" was present for the entire trial in this cause.[6] Citing Rule 24 of the Tennessee Rules of Appellate Procedure, the trial court directed the parties to comply with this rule, and gave Mother a specified period of time in which to have a transcript of the proceedings prepared.[7]

---

[6]The appellate record up to that point had not indicated whether a court reporter had been present at trial.

[7]The trial court relied on the following provisions of Rule 24:

> b) Transcript of Stenographic or Other Substantially Verbatim Recording of Evidence or Proceedings.
>
> *If a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. . . .* The transcript, certified by the appellant, the appellant's counsel, or the reporter as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal.
>
> (c) Statement of the Evidence When No Report, Recital, or Transcript Is Available.
>
> *If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available*, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. . . . If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

(continued...)

Under the circumstances, the trial court held that a statement of the evidence was not an alternative for Mother as the appellant.[8]

We note that the trial court's order on remand did not expressly approve or disapprove Mother's proposed statement of the evidence; instead, it cited the provisions of Rule 24 and permitted time for the preparation of a transcript. Rule 24(f) gives the trial judge a specified time period in which to approve a statement of the evidence and rule on objections; if this is not done, "the . . . statement of the evidence . . . shall be deemed to have been approved and shall be so considered by the appellate court. . . ."[9] Tenn. R. App. P. 24(f). We interpret the trial court's timely order as disapproval of Mother's proposed statement of the evidence on the basis that Tenn. R. App. P. 24 allows only a transcript where a court reporter was present at trial. Therefore, we do not consider Mother's proposed statement of the evidence as "deemed to have been approved" on appeal. *See* Tenn. R. App. P. 24(f).

Mother has raised no issue on appeal regarding the trial court's order that a statement of the evidence was not a permissible alternative because a court reporter was present at trial.[10] Therefore, we do not address the trial court's ruling on this issue. Mother elected instead to proceed with her appeal based only on the technical record, with no transcript and no statement of the evidence.

---

[7](...continued)
Tenn. R. App. P. 24(b) and (c) (2011) (emphasis added).

[8]The trial court relied in part on the official comment to subsection (c) of Tenn. R. App. P. 24, which states: "This subdivision [Rule 24(c) on statement of the evidence] is available only in those situations in which a stenographic report or other substantially verbatim recital or transcript of the evidence is unavailable." Tenn. R. App. P. 24(c) cmt. (c).

[9]Rule 24(f) includes an exception where the trial judge died or was unable to act.

[10]We do not know, for example, whether the court reporter who was present at trial was engaged only by Father, and whether the court reporter would have prepared a transcript for Mother, had he or she been requested to do so. This may affect whether a stenographic report is "available" under Rule 24. We note **Bellamy v. Cracker Barrel Old Country Store, Inc.,** which states that "the rules allow for a statement of the evidence or proceedings to be used in cases where a verbatim transcript does not exist." **Bellamy**, 302 S.W.3d 278, 281 (Tenn. 2009). **But see Trusty v. Robinson**, No. M2000-01590-COA-R3-CV, 2001WL 96043, at *2; 2001 Tenn. App. LEXIS 75, at *7 (Tenn. Ct. App. Feb. 6, 2001) ("The judicial system is not unmindful of the expense of verbatim transcripts and the practical barrier this expense can create for indigents or even persons of moderate means who desire to pursue an appeal. Accordingly, Tenn. R. App. P. 24(c) empowers civil litigants to prepare a statement of the evidence or proceedings in lieu of a verbatim transcript.").

The absence of either a transcript or a statement of the evidence significantly ties the hands of the appellate court. "The duty to see to it that the record on appeal contains a fair, accurate, and complete account of what transpired with respect to the issues being raised on appeal falls squarely on the shoulders of the parties themselves, not the courts." *Trusty v. Robinson,* No. M200-01590-COA-R3-CV, 2001 WL 96043, at \*1; 2001 Tenn. App. LEXIS 75, at \*4 (Tenn. Ct. App. Feb. 6, 2001) (citing Tenn. R. App. P. 24(b); *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993); *Realty Shop, Inc. v. RR Westminister Holding, Inc.*, 7 S.W.3d 581, 607 (Tenn. Ct. App. 1999); *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997)). As a self-represented litigant, Mother is entitled to fair and equal treatment but "is 'not excused from complying with the applicable substantive and procedural law' imposed on litigants that are represented by counsel." *Britt v. Chambers*, No. W2006-00062-COA-R3-CV, 2007 WL 177902 at \*3; 2007 Tenn. App. LEXIS 38, at \*9 (Tenn. Ct. App. Jan. 25, 2007) (citing *Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). As this Court has only appellate jurisdiction, its power to review issues raised on appeal is limited to "factual and legal issues for which an adequate legal record has been preserved." *Trusty*, 2001 WL 96043, at \*1; 2001 Tenn. App. LEXIS 75, at \*4 (Tenn. Ct. App. Feb. 6, 2001) (citing *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976); *Trollinger v. Tennessee Farmers Mut. Ins. Co.*, No. 58, 1989 WL 22766, at \*2; 1989 Tenn. App. LEXIS 179, at \*5 (Tenn. Ct. App. Mar. 17, 1989)). *See also Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004). We are not permitted to consider documents that were not made part of the appellate record. *See McDowell v. McDowell*, No. M2000-02153-COA-R3-CV, 2001 WL 856585, at \*1; 2001 Tenn. App. LEXIS 557, at \*4 (Tenn. Ct. App. July 31, 2001) (appellate courts may only review what is in the record and not what might have been or should have been included).

### *Disqualification of Attorney*

The absence of a transcript or a statement of the evidence does not hinder our review of the trial court's disqualification of Mother's former attorney, Ms. Martin, so we consider this issue first. Mother argues on appeal that the trial court erred in disqualifying Mother's attorney without an evidentiary hearing, because Father wanted Mother's attorney disqualified to gain an advantage in discovery, such as taking Mother's deposition while she was self-represented. Mother also argues that the disqualification of her attorney was a hardship on her.

This Court has previously addressed the disqualification of attorneys:

> A trial court has a broad range of options available to insure that its proceedings are fair both in appearance and in fact. Disqualifying an attorney

-10-

is the most drastic.  It invariably causes delay, increases costs, and deprives parties of counsel of their choice.  Courts should, therefore, disqualify counsel with considerable reluctance and only when no other practical alternative exists.

*In re Ellis*, 822 S.W.2d 602, 605 (Tenn. Ct. App. 1991) (internal citations omitted).  Under the Rules of the Supreme Court of the State of Tennessee, a lawyer may be disqualified if the lawyer is likely to be a witness:

> (a)  A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> > (1) the testimony relates to an uncontested issue;
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> > (3) disqualification of the lawyer would work substantial hardship on the client.

Tenn. Sup. Ct. Rule 8, RPC 3.7(a) (2011).  The comments to this rule explain:

> (1) Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.
> (2) . . .  The opposing party has a proper objection where the combination of roles may prejudice that party's rights in the litigation.  A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others.  It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
> * * *
> (4) Apart from [the] two exceptions [for testimony on an uncontested issue or on the value of legal services], paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. . . . [I]n determining whether the lawyer should be disqualified, . . . due regard must be given to the effect of disqualification on the lawyer's client.

Tenn. Sup. Ct. Rule 8, RPC 3.7 cmts (1), (2), and (4).

-11-

After the trial in this cause, the trial court made a factual finding that Ms. Martin left the child with Mother for Mother's parenting time and did not comply with the consent order requiring Ms. Martin to supervise Mother's parenting time. However, at the time Ms. Martin was disqualified, this finding had not yet been made. The trial court's order was based on the clear likelihood that Ms. Martin would have to be a witness at the trial on the incident reported by Father's private investigator. The trial court's order disqualifying Ms. Martin states: "The Court has considered the balance between the interests of Father and Mother. The Court has concluded that prejudice to Father outweighs any prejudice caused to Mother."

From our review of the record, the trial court was left with little choice but to disqualify Ms. Martin. Ms. Martin had become a witness in a key incident that related to primary issues in the trial, namely, Mother's honesty, Mother's compliance with the trial court's orders, and her parenting of the parties' child. Undoubtedly the disqualification of Ms. Martin worked a hardship on Mother. This was expressly considered by the trial court. Moreover, the hardship to Mother could have been avoided by her compliance with the trial court's order requiring supervision of her parenting time by Ms. Martin. We find no abuse of the trial court's discretion in its decision to disqualify Ms. Martin and her law firm from the continued representation of Mother in this case.

### *Contempt*

The absence of a transcript also does not affect our review of one issue raised by Mother in connection with the finding of contempt, namely, the trial court's failure to advise her of her right to be represented by counsel and appoint a lawyer to represent her.

In connection with Father's efforts to disqualify Ms. Martin, Mother filed pleadings in which she claimed that she could not afford to hire substitute counsel. After Ms. Martin was disqualified, she filed additional pleadings *pro se*, seeking a delay in her deposition to give her more time to find another lawyer; these pleadings likewise claimed a lack of funds to pay a lawyer.

Rule 13 of the Rules of the Supreme Court of the State of Tennessee states as follows:

> (d)(1) In the following cases, . . . the court . . . shall advise any party without counsel of the right to be represented throughout the case by counsel and that counsel will be appointed if the party is indigent and requests appointment of counsel.
>
> * * *

-12-

> (B) Contempt of court proceedings in which the defendant is in
> jeopardy of incarceration;

Tenn. Sup. Ct. R. 13(d)(1)(B) (2011). *See Cottingham v. Cottingham*, 193 S.W.3d 531, 536-37 (Tenn. 2006); *State ex rel. Creighton v. Creighton*, No. M2010-01171-COA-R3-CV, 2011 WL 1344638, at *4 (Tenn. Ct. App. Apr. 7, 2011). The record in this case does not indicate that Mother was informed of her right to be appointed counsel if indigent and knowingly waived that right. *See Lovin v. State*, 286 S.W.3d 275, 288 (Tenn. 2009). Quite the opposite; Mother's pretrial pleadings consistently indicate her desire to be represented by an attorney and her claim that she was financially unable to hire substitute counsel.

Although the trial court does not expressly say that the contempt holding was for criminal contempt, clearly it was. The trial judge sentenced Mother to ten days' incarceration, albeit suspended if she refrained from further misbehavior. Moreover, although Mother did not file an affidavit of indigency, she let it be known to the trial court that she believed herself financially unable to hire a lawyer. We must conclude that the trial court erred in not informing Mother of her right to be represented in the contempt proceeding by counsel and the right to appointment of counsel if she was found to be indigent.

Mother raises other issues with the contempt finding, arguing that her actions were not willful and she was not alone with the child because the maternal grandmother was present. We do not reach these issues because the trial court's failure to advise Mother of her right to counsel and appoint an attorney if warranted requires us to vacate the contempt finding.

Therefore, we vacate the trial court's finding that Mother was in criminal contempt of court for disobeying the court order requiring that her parenting time be supervised by Ms. Martin. The cause must be remanded for a rehearing on this issue, assuming Father chooses to continue to pursue it on remand.

### *Resolution of All Outstanding Petitions*

As Mother frames the issue in the Issues Presented for Review in her appellate brief, she appears to contend that the trial court left matters unresolved. In fact, in her brief, Mother argues that the trial court erred in denying her contempt petition against Father and did not give her an adequate opportunity to present her case.

For completeness, this Court reviewed the appellate record and is satisfied that the trial court in fact addressed and resolved all outstanding matters, including Mother's contempt petition against Father. The correctness of the trial court's ruling is addressed below.

-13-

### Remaining Issues Except Attorney Fees

The remaining issues Mother raises on appeal, with the possible exception of the award of attorney fees, are highly fact-specific and would require a careful review of the evidence presented to the trial court. These include modification of the parenting plan to designate Father as the primary residential parent, whether Mother was in contempt of court, whether Mother was abusive to the parties' child, which witnesses were not permitted to testify, which documents were excluded from evidence, and what testimony was excluded.

"Without a transcript or a statement of the evidence, the appellate court cannot know what evidence was presented to the trial court, and there [are] no means by which we can evaluate the appellant's assertion that the evidence did not support the trial court's decision." *Britt,* 2007 WL 177902 at *3; 2007 Tenn. App. LEXIS 38, at *8; *see also Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992) ("This court cannot review the facts *de novo* without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings."). *See also Piper v. Piper*, No. M2005-02541-COA-R3-CV, 2007 WL 295237, at *4; 2007 Tenn. App. LEXIS 70, at *11 (Tenn. Ct. App. Feb. 1, 2007) ("An incomplete appellate record is fatal to an appeal on the facts.").

Tennessee appellate courts have routinely held that, "in the absence of a transcript or a statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found in favor of the Appellee." *Britt,* 2007 WL 177902 at *3; 2007 Tenn. App. LEXIS 38, at *8 (citing *Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1996); *Lallemand v. Smith*, 667 S.W.2d 85, 88 (Tenn. Ct. App. 1983)). Moreover, in the absence of a transcript or a statement of the evidence, we are left with no means to review the trial court's discretionary decisions regarding which witnesses should be permitted to testify and on what topics, and which documents should be admitted into evidence at trial. Therefore, the trial court's decisions on all of these issues are affirmed.

### Attorney Fees

Finally, Mother argues on appeal that the trial court erred in ordering her to pay Father's attorney fees and his litigation expenses, such as the fee for his private investigator, totaling $93,749.11. She argues that there is no evidence in the record to support such an award.

In the transcript of the trial court's oral ruling rendered at the conclusion of the trial, the trial court refers to exhibits in evidence on Father's attorney fees and his other expenses related to the litigation. Again, in the absence of a proper record of the proceedings below, such as a transcript or statement of the evidence, we have little choice but to presume that the record

-14-

supports the trial court's determination on the amount of Father's attorney fees and other expenses.

As noted above, the decision on whether to award attorney fees and expenses is within the sound discretion of the trial court. *Gonsewski*, 350 S.W.3d at 113. The amount of attorney fees and expenses awarded against Mother is outsize indeed. However, the trial court's remarks at the conclusion of the hearing made it clear that the trial judge held Mother squarely responsible for causing the post-divorce wrangling, through her dishonesty, unprovoked physical assaults, and repeated intentional frustration of Father's parenting time. Overall, Under these circumstances we cannot conclude that the award against Mother is an abuse of the trial court's discretion. However, a portion of the attorney fees and some of the litigation expenses, such as the private investigator fee, relate to the contempt finding vacated above. Because we have found it necessary to vacate the contempt finding, we must also vacate the award of attorney fees and expenses insofar as they relate to the contempt finding. On remand, the trial court is directed to subtract from the award of attorney fees and costs any that relate to the contempt finding. These may be reconsidered in any hearing on remand on the contempt petition.

## CONCLUSION

The decision of the trial court is vacated in part, affirmed in part, and remanded, as set forth above. Costs on appeal are assessed one-half against Appellant Shanette Collier Chandler and one-half against Appellee Kylan Chandler for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

-15-